# Exhibit 2



U.S. Department of Homeland Security
Washington, DC 20528

February 18, 2026

**MEMORANDUM FOR:** U.S. CITIZENSHIP AND IMMIGRATION SERVICES (USCIS)
U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT (ICE)

**FROM:** Joseph B. Edlow
Director,
U.S. Citizenship and Immigration Services

Todd M. Lyons
Senior Official Performing the Duties of the Director,
U.S. Immigration and Customs Enforcement

**SUBJECT:** Detention of Refugees Who Have Failed to Adjust to Lawful Permanent Resident Status

## I.   Purpose

This memorandum states the policy of U.S. Citizenship and Immigration Services (USCIS) and Immigration and Customs Enforcement (ICE) regarding when, and under what circumstances, immigration officers may detain refugees who have failed to adjust to lawful permanent resident (LPR) status. To the extent that any provision of this memorandum is, or may appear, inconsistent with other memoranda or guidance, this memorandum is controlling.

USCIS and ICE have determined that prior policy decisions and operational guidance resulted in incomplete implementation of the requirements of section 209 of the Immigration and Nationality Act (INA), 8 U.S.C. § 1159, governing the conditional admission of refugees and their adjustment of status. In practice, refugees who did not file an application for adjustment or did not return for the required inspection and examination were allowed to remain in the United States without undergoing the full, congressionally mandated, second round of vetting. This created a population of conditional refugees who had not been fully re-screened, with associated public safety and national security risks.

## II.   New Policy

When a refugee is admitted to the United States, the admission is conditional and subject to a mandatory review after one year of physical presence in the United States under INA § 209(a)(1), 8 U.S.C. § 1159(a)(1).[1] At one year after admission:

---

[1] 8 C.F.R. § 209.1(a)(1) states that every refugee whose status has not been terminated "is required to apply to USCIS one year after entry in order for USCIS to determine his or her admissibility . . . ." 8 C.F.R. § 209.1(b) provides that this

- The refugee must return, or be returned, to Department of Homeland Security (DHS) custody for inspection and examination for admission as an LPR.

- If the refugee does not voluntarily return, DHS will return the individual to custody (i.e., arrest and detain) for this purpose.

- DHS may maintain custody for the duration of the inspection and examination process.

This detain-and-inspect requirement ensures that refugees are re-vetted after one year, aligns post-admission vetting with that applied to other applicants for admission, and promotes public safety.

### III. Prior Policies

Past policies on this topic include a Memorandum from James Chaparro, ICE Director of Detention and Removal Operations, titled *Detention of Refugees Admitted Under INA § 207 Who Have Failed to Adjust to Lawful Permanent Resident Status* (May 10, 2010) (Chaparro Memorandum).

Under those policies:

- Failure by a refugee to obtain LPR status, by itself, was not treated as a basis for removal and was not considered a proper basis for detention.

- If an unadjusted refugee was arrested, DHS was required, within 48 hours, to either: (1) release the individual or (2) initiate removal proceedings by issuing a Notice to Appear. If it became apparent earlier that no ground of inadmissibility or deportability applied, the individual was to be promptly released.

### IV. Rescission

DHS rescinded the Chapparo Memorandum on December 18, 2025.[2] While ICE believes the December rescission is valid, DHS has undertaken a fresh look at the past policies and rescinds them anew. For the reasons stated below, we rescind the Chaparro Memorandum and any other policies that conflict with the policies stated in this memorandum.

### V. Rationale for the Change

There are many reasons that DHS is rescinding these policies. As explained below, the changes are designed to better enforce the statutory requirement that aliens admitted as refugees who have been present in the United States for at least one year return or be returned to DHS custody for inspection and examination for admission as an LPR. They further reflect the public policy interest in thorough vetting of aliens admitted as refugees, including vetting for national security, public safety, and fraud-related

---

application for LPR status "must be submitted along with biometrics . . . and in accordance with the applicable form instructions."

[2] ICE Memorandum from Marcos Charles, Acting Associate Executive Director, Office of Enforcement and Removal Operations, *Rescission of ICE Policy No. 11039.1, Detention of Refugees Admitted Under INA 207 Who Have Failed to Adjust to Lawful Permanent Resident Status dated May 10, 2010* (Dec. 18, 2025).

issues. In making these changes, DHS considered any potential reliance interests, and as explained more fully below, DHS believes that any perceived interests are strongly outweighed by the public policy reasons described below.

### A. Statutory Framework

Section 209 of the INA, 8 U.S.C. § 1159, establishes a mandatory post-admission vetting framework for refugees and provides DHS with the authority and responsibility to take refugees into custody for that purpose. Refugee admission is expressly conditional and time limited. A refugee who has been physically present in the United States for at least one year, whose refugee status has not been terminated, and who has not adjusted to LPR status "shall, at the end of such year period, return or be returned to the custody of the Department of Homeland Security for inspection and examination for admission to the United States as an immigrant in accordance with" INA §§ 235, 240, and 241, 8 U.S.C. §§ 1225, 1229a, and 1231. The one-year inspection and examination requirement is the mechanism by which DHS determines whether the individual is admissible as an immigrant and should be adjusted to LPR status or is removable and should be placed into immigration proceedings. Assessment of admissibility may result in a determination that the individual was not properly classified as a refugee (e.g., the individual established that he or she is a refugee through misrepresentation or fraud). If it is determined the individual did not meet the refugee definition at INA § 101(a)(42), 8 U.S.C. § 1101(a)(42), at the time of admission, DHS may terminate the refugee status and place the alien in immigration proceedings pursuant to INA § 207(c)(4), 8 U.S.C. § 1157(c)(4), and 8 C.F.R. § 207.9.

#### 1. Custody, Arrest, and Detention

DHS may arrest and detain a refugee who has lived in the United States for at least one year and has not yet acquired LPR status under INA § 209(a)(1), 8 U.S.C. § 1159(a)(1). This provision requires that unadjusted refugees "return or be returned to [DHS] custody" for inspection and examination for admission to the United States. Refugees may be considered to have voluntarily returned to custody by submitting an application to adjust status and appearing at scheduled interviews or appointments pertaining to their adjustment of status application under INA § 209, 8 U.S.C. § 1159. However, if a refugee does not voluntarily return at the one-year mark, the statute provides that the alien "shall . . . be returned" to DHS custody. This requires DHS to take the affirmative actions of locating, arresting, and taking the alien into custody. "Custody," as used in INA § 209(a)(1), 8 U.S.C. § 1159(a)(1), means detention. *See Jennings v. Rodriguez*, 583 U.S. 281, 307-08 (2018) (relying on "ordinary English usage to equate "detain" and "custody"); *see also* 8 C.F.R. § 241.4(l)(1) (providing for aliens released on an order of supervision to be "returned to custody" based on a violation of conditions of release).

Detention under INA § 209(a)(1), 8 U.S.C. § 1159(a)(1), is not novel. Several courts have recognized that the detention of unadjusted refugees is pursuant to INA § 209(a)(1), 8 U.S.C. § 1159(a)(1). *See, e.g., Idle H. v. Bondi*, No. 26-cv-315, 2026 WL 266462, at *2-3 (D. Minn. Feb. 2, 2026); *Omanovic v. Crawford*, No. CV06-0208, 2006 WL 2256630, at *5 (D. Ariz. Aug. 7, 2006) (distinguishing between detention pending an admissibility determination under INA § 209(a)(1) and detention pending a removal proceeding and concluding that detention pending the admissibility determination was under INA § 209(a)(1)); *Andric v. Crawford*, No. CV06-0002, 2006 WL 1544184, at *2 (D. Ariz. May 31, 2006) (same); *see also Luong v. Gonzales*, No. CV07-146, 2007 WL 3342727, at *4 (D. Ariz. Nov. 8, 2007) (noting that the immigration court did not have jurisdiction over custody of

an alien detained pursuant to INA § 209, 8 U.S.C. § 1159, and that the petitioner's INA § 209, 8 U.S.C. § 1159, detention was not indefinite and lasted only for the amount of time to determine his admissibility to the United States).

While in detention, such aliens are inspected and examined for admission to the United States as an immigrant. Thus, detention pursuant to INA § 209(a)(1), 8 U.S.C. § 1159(a)(1), is not indefinite, but it is also not limited to merely 48 hours. Instead, it may last for the reasonable length of time it takes to inspect and examine the alien to determine whether he or she is admissible.

Even in cases where the alien is arrested without a warrant, 8 C.F.R. § 287.3 does not limit detention under INA § 209(a)(1), 8 U.S.C. § 1159(a)(1), to 48 hours. *See* 8 C.F.R. § 287.3(d). The plain language of 8 C.F.R. § 287.3 reflects that this regulation applies to circumstances where an alien is arrested without a warrant and a determination must be made as to the initiation of immigration proceedings. Arrest and detention under INA § 209(a)(1), 8 U.S.C. § 1159(a)(1), however, is for the purpose of inspection and examination of the refugee to determine whether his or her status may be changed to that of an LPR. Upon completion of the inspection, the alien is either admitted as an LPR or placed in immigration proceedings. If placed in immigration proceedings, the alien's detention authority will be determined by the procedural posture of the alien's case.

2. **Cross-Reference to INA § 235, 8 U.S.C. § 1225**

Section 209(a)(1) of the INA, 8 U.S.C. § 1159(a)(1), expressly requires that the inspection and examination at the one-year mark be conducted "in accordance with" INA § 235, 8 U.S.C. § 1225, among other provisions. INA § 235, 8 U.S.C. § 1225, in turn, mandates detention of applicants for admission. By cross-referencing INA § 235, 8 U.S.C. § 1225, Congress linked the refugee one-year inspection to the same detention-and-inspection framework that applies to other applicants for admission, reinforcing that detention during this process is expected and required. The statutory history supports this reading: Since 1980, INA § 209, 8 U.S.C. § 1159, has cross-referenced INA § 235, 8 U.S.C. § 1225, which has long required detention of individuals undergoing inspection where admissibility is in doubt.

3. **Policy Implications**

DHS must treat the one-year mark as a mandatory re-vetting point for all refugees who have not adjusted to LPR status, ensuring either that they are scheduled to "return" to custody for inspection or, if they do not comply, that they "be returned" to custody through enforcement action. DHS is authorized and expected to use arrest and temporary detention as necessary tools to secure the individual's presence for the required inspection and examination and to maintain custody for the limited duration needed to complete that process. The one-year inspection is not discretionary; It is a required step to determine whether the refugee may remain in the United States as an LPR, should have status terminated, or should be placed into removal proceedings. Consistent implementation of this framework is central to maintaining the integrity of the refugee program, ensuring that conditional admissions are fully reviewed, and addressing associated public safety and national security risks.

### B. Return to custody for inspection is critical to ensuring full and thorough vetting.

In addition to the need for full compliance with the statute, this policy is critical to ensuring that refugees admitted to the United States are fully screened and vetted. Fully vetting and screening refugees one year after admission is necessary to verify eligibility for adjustment to LPR status and to protect national security, public safety, and the integrity of the immigration system. The prior policies significantly impeded full vetting, because refugees were able to avoid reinspection or were subject to only an artificially time-limited vetting process. As a consequence, the system may have failed to flag refugees who posed risks to public safety or national security, who had a background of fraud, or who were ineligible for permanent residency.

Specifically, thorough vetting is critical for the following key reasons:

- *Eligibility and Fraud Prevention*: Comprehensive screening helps prevent immigration fraud, such as the use of false identities, use of forged documents, or misrepresentation of facts, particularly to establish eligibility for admission as a refugee in the first instance. This maintains the integrity of the immigration system and ensures that LPR status is granted only to those refugees who qualify. It further provides a vetting mechanism that can result in termination of refugee status for aliens who were not actually refugees at the time of their admission (e.g., that they obtained refugee status through misrepresentation or fraud).

- *National Security*: Screening helps identify aliens who may pose security risks, such as those with ties to terrorism, criminal organizations, or hostile foreign entities. This reduces the likelihood of adjusting the status of individuals who could threaten the safety and security of the United States.

- *Public Safety*: Vetting processes are designed to detect individuals with serious criminal backgrounds or histories of violent behavior. This helps protect communities from potential harm and ensures that those adjusting to LPR status do not pose a danger to the public.

- *Compliance with Laws and Policies*: Proper screening and vetting ensures that all refugees meet the legal requirements for adjustment to LPR status, and that DHS complies with the statutory requirement that it inspect refugees for admissibility again one year after entry.

These critical national interests were significantly impeded by the prior policies, which prioritized speed and volume of refugee admissions over depth and quality of refugee adjudications. A USCIS review of recently admitted refugees from just the Western Hemisphere illustrates some of the failures that have resulted from these practices. Specifically, USCIS Fraud Detention and National Security found that of 31,000 refugees admitted to the United States from Ecuador, El Salvador, Guatemala, Honduras, and Venezuela from 2021 to 2024:

- 10% had evidence of public safety concerns, including gang membership, that were not addressed.

- Over 42% had been insufficiently vetted to determine whether they presented a public safety concern due to an inability to fully verify identity.

- Less than 47% could be conclusively found to not represent a public safety concern.

In light of these known failures, and the likelihood of other similar failures in screening of refugees from other parts of the world, DHS believes the course correction described in this memorandum is critically important.

### C. Any perceived reliance interests are outweighed by important public policy interests.

DHS has carefully considered whether any reliance interests may be affected by the new policy. DHS notes that the statute is clear that refugees must "return or be returned" to custody upon one year of presence in the United States, and this policy simply implements that clear statutory requirement. Refugees are responsible for knowledge of the law, including the regulations cited above that specifically require every refugee to file an application for adjustment of status one year after entry.

Refugees, upon conditional admission, are provided notice that they must apply for adjustment of status to become LPRs.[3] This notice is provided on the USCIS website[4] and may also come from CBP upon the refugee's admission at a U.S. Port of Entry or from nonprofit resettlement agencies who are charged by the U.S. Department of State through cooperative agreements to assist refugees.[5] Such agencies generally provide, among other things, information on permanent resident alien status and should encourage and assist refugees as soon as possible after arrival to obtain or complete immunizations as required for adjustment to LPR status one year after arrival.

Accordingly, DHS believes that refugees are, and have been, on notice of this requirement and cannot have valid reliance interests in any prior lax enforcement. Nonetheless, DHS acknowledges that refugees may have believed that the prior USCIS and ICE guidance implied that refugees could fail to comply with the statute—*i.e.*, that they could either not apply to adjust status or not appear for examination and inspection—without consequence.

DHS considered whether such refugees could rely on this misguided belief and thus fail to take steps to prepare to return to custody for the time necessary for DHS to conduct the required inspection. For example, they could fail to make arrangements with family members, employers, or legal representation or they could mistakenly believe that any custody would be limited to 48 hours. In that case, refugees could potentially experience adverse consequences upon arrest and detention under this new policy, such as financial consequences of missing work, unmet household and family obligations, and a delay in securing legal representation.

---

[3] *See* 8 C.F.R. § 209.1.
[4] USCIS, *Green Card for Refugees*, https://www.uscis.gov/green-card/green-card-eligibility/green-card-for-refugee (last visited Feb. 13, 2026).
[5] *See, e.g.*, USCIS, *Green Card for Refugees*, https://www.uscis.gov/green-card/green-card-eligibility/green-card-for-refugee (last visited Feb. 13, 2026); U.S. Department of State, *The Reception and Placement Program*, https://2009-2017.state.gov/j/prm/ra/receptionplacement/index.htm#:~:text=The%20standard%20cooperative%20agreement%20between,communities%20throughout%20the%20United%20States (last visited Feb. 13, 2026).

As already noted, DHS believes any such claimed reliance would be misguided in light of the clear existing statutory and regulatory requirements. Even if any reliance were valid, however, DHS believes these potential interests are strongly outweighed by the public policy interest in full compliance with the statute. Similarly, any such interests are also outweighed by the public interest in thorough vetting for the purposes of protecting national security and public safety, and for reducing fraud.

### VI. Conclusion

This updated guidance establishes a clear, Department-wide policy to fully implement INA § 209, 8 U.S.C. § 1159, and close security gaps. Under this policy:

- Refugees who fail to comply with the INA § 209, 8 U.S.C. § 1159, requirements—by not filing for adjustment or not returning for inspection and examination—will be returned to DHS custody for the required inspection and examination.

- Individuals who, upon inspection, are found ineligible for admission as LPRs may be subject to removal from the United States.

This policy realignment is intended to ensure complete post-admission vetting of refugees, strengthen screening integrity, and reinforce DHS's commitment to faithfully executing statutory requirements in support of public safety and national security.