# Exhibit 3

Policy Number: 11039.1
FEA Number: 112-05
Office of Detention and Removal Operations

U.S. Department of Homeland Security
500 12th St., SW
Washington, DC 20536



U.S. Immigration
and Customs
Enforcement

MAY 1 0 2010

MEMORANDUM FOR: Field Office Directors

FROM: James Chaparro
Director

SUBJECT: Detention of Refugees Admitted Under INA § 207 Who Have Failed to Adjust to Lawful Permanent Resident Status

Purpose

This memorandum clarifies when and under what circumstances U.S. Immigration and Customs Enforcement's (ICE) Office of Detention and Removal Operations (DRO) Field Offices may detain refugees who have failed to adjust to lawful permanent resident (LPR) status. To the extent that any provisions of this memorandum may appear inconsistent with Chapter 11.19(e) or other provisions of the Detention and Removal Operations Policy and Procedure Manual,[1] this memorandum should be followed.

Background

An alien resettled in the United States under the U.S. Refugee Admissions Program is conditionally admitted to the United States as a "refugee" under section 207 of the Immigration and Nationality Act (INA or Act). Section 209(a)(1) of the Act, entitled "Adjustment of Status of Refugees," generally provides that after such refugees have been physically present in the United States for at least one year, they "shall, at the end of such period, return or be returned to the custody of the Department of Homeland Security for inspection and examination for admission to the United States as an immigrant in accordance with [INA §§ 235, 240, and 241]."

Although this language creates a clear expectation that refugees should present themselves for adjustment to LPR status after one year's physical presence in the United States, ICE officers and agents occasionally encounter refugees who have failed to timely apply for adjustment of status under INA § 209(a). Such encounters most often occur when a refugee has been apprehended by other law enforcement agencies for suspected criminal activity.

---

[1] The Policy and Procedure Manual should be promptly revised, in consultation with the Office of the Principal Legal Advisor, to reflect the approach outlined in this memorandum.

Notice: *This memorandum is intended to provide internal operational and policy guidance to ICE personnel. It does not, is not intended to, shall not be construed to, and may not be relied upon to, create any rights, substantive or procedural, enforceable at law by any person in any matter, criminal or civil.*

www.ice.gov
REL0000025089

Subject: Detention of Refugees Admitted Under INA § 207 Who Have Failed to Adjust Status
Page 2

Under section 209(a) of the Act, refugees are subject to examination and inspection by USCIS for admission to the United States as an LPR after one year's physical presence. Failure by such individuals to apply for adjustment of status under this provision is not a sufficient ground to place them in removal proceedings, and therefore not a proper basis for detaining them. ICE, however, may charge a refugee with removability, consistent with the guidance below, if one or more grounds apply even if the individual's refugee status has not been terminated. Moreover, if USCIS denies a refugee's application for adjustment of status, USCIS may place the individual in removal proceedings as a new applicant for admission, charging any applicable grounds of inadmissibility under section 212 of the Act. See 8 C.F.R. § 209.1(e).

Discussion

ICE has arrest authority over aliens under section 287(a)(2) of the Act and detention authority under sections 235 and 236, among other provisions of law. Except in case of emergency or other extraordinary circumstances, upon the arrest of an unadjusted refugee upon reasonable belief of removability, a DRO Field Office must determine, no later than 48 hours after the arrest, whether to release the individual or issue a Notice to Appear (NTA), Form I-862, indicating the removal charge(s) applicable to the alien. See 8 C.F.R. § 287.3(d); Memorandum from Asa Hutchinson, Undersecretary for Border and Transp. Sec., Guidance on ICE Implementation of Policy and Practice Changes Recommended by the Dep't of Justice Inspector Gen. 2 (Mar. 30, 2004). If it becomes apparent earlier that no removability ground applies, the individual must be released promptly.

Accordingly, upon taking an unadjusted refugee into custody based upon a reasonable belief that he or she is removable, the DRO Field Office first must finalize its determination whether to place the individual in removal proceedings under INA § 240 and, if so, whether to continue detention. A refugee may not be placed in removal proceedings based on a failure to adjust status or to apply for adjustment of status because an alien's failure to adjust status or apply for adjustment under INA § 209(a) is not a ground of removability. Therefore, the only way DRO may place an unadjusted refugee in proceedings is if a violation of the INA can be established that is unrelated to the alien's failure to adjust, such as fraud or a criminal conviction that forms the basis for a charge under INA §§ 212 or 237.

The DRO Field Office, in the exercise of discretion, may make a determination to issue an NTA to any unadjusted refugee for whom it believes there is prima facie evidence of inadmissibility under INA § 212(a) or deportability under INA § 237(a), regardless of whether the individual's refugee status has been terminated and even if USCIS has not yet considered the refugee's adjustment application. Although DHS is working to achieve clarity in the law, some immigration courts have taken varied positions on whether someone initially admitted as a refugee under INA § 207 is most appropriately charged under section 212 or 237 of the Act. It is critical, therefore, that DRO Field Offices work closely with ICE Offices of Chief Counsel (OCCs) to identify the most appropriate charge(s) and draft legally sufficient NTAs.[2]

---

[2] Refugees admitted under INA § 207 who are not seeking readmission at a port-of-entry, however, should not be considered arriving aliens as defined in 8 C.F.R. § 1.1(q).

Notice: *This memorandum is intended to provide internal operational and policy guidance to ICE personnel. It does not, is not intended to, shall not be construed to, and may not be relied upon to, create any rights, substantive or procedural, enforceable at law by any person in any matter, criminal or civil.*

REL0000025089

Any NTA must be served on the alien promptly, and service must in any case be accomplished within 72 hours of arrest in the absence of emergency or other extraordinary circumstances. For unadjusted refugees who are placed in removal proceedings, DRO should make custody determinations under section 236 of the Act.[3]

If it is determined that the individual should be placed in removal proceedings, DRO Field Office personnel should also attempt to ascertain, through examination of available records systems and direct questioning of the alien, whether he or she has applied for adjustment of status under INA § 209(a). If no application has been filed, the DRO Field Office should promptly notify its corresponding USCIS Field Office Director, or a point-of-contact designated by the USCIS Field Office Director, of the decision to charge, so that USCIS can commence the adjustment process pursuant to INA § 209(a) and 8 C.F.R. § 209.1.[4] The DRO Field Office should advise the alien that he or she is required by law to apply for adjustment of status and provide the alien with a copy of the Form I-485 (Application to Register Permanent Residence or Adjust Status) and Form I-602 (Application by Refugee for Waiver of Grounds of Excludability), and corresponding instructions, which are all available on the USCIS public website. To the fullest extent possible, these forms should be completed by the alien before he or she is released from custody.[5] DRO Field Offices should make a copy of the forms for the alien and provide the originals to the USCIS Field Office Director (or designee).

In addition to providing USCIS with identifying information (including full name, alien registration number, and date of birth pertaining to the alien), a DRO Field Office should provide an explanation of how the alien came to be in ICE custody. This information, particularly if it entails a criminal arrest or conviction, may be relevant to USCIS's determination whether to grant adjustment of status.

If a determination to place an unadjusted refugee in removal proceedings has not been made within the initial 48-hour period discussed above, the DRO Field Office should release the alien with a reminder that the INA imposes an obligation upon him or her to apply for adjustment of status under section 209(a) and to provide DHS with updated address information under section



(b)(7)(E)

Notice: *This memorandum is intended to provide internal operational and policy guidance to ICE personnel. It does not, is not intended to, shall not be construed to, and may not be relied upon to, create any rights, substantive or procedural, enforceable at law by any person in any matter, criminal or civil.*

265. The DRO Field Office should notify the USCIS District Director (or designee) of the release and provide USCIS with any information obtained from the alien regarding where he or she currently resides.

Contact

For questions about this guidance, DRO Field Offices should contact the DRO Headquarters Case Management Unit. For legal questions regarding refugee detention and charging authority, or in the event DRO Field Offices become aware of federal court litigation brought by unadjusted refugees challenging their ICE detention, they should promptly contact their corresponding OCCs.

Attachment

Notice: This memorandum is intended to provide internal operational and policy guidance to ICE personnel. It does not, is not intended to, shall not be construed to, and may not be relied upon to, create any rights, substantive or procedural, enforceable at law by any person in any matter, criminal or civil.