**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| JEAN A., HAMAD B., MONA C., YASMINE D., SAM E., ABDO F., INTERNATIONAL INSTITUTE OF NEW ENGLAND, and JEWISH FAMILY SERVICE OF WESTERN MASSACHUSETTS,<br><br>    *Plaintiffs*,<br><br>    v.<br><br>KRISTI NOEM, in her official capacity as Secretary of Homeland Security; UNITED STATES DEPARTMENT OF HOMELAND SECURITY; UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT; UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES; TODD LYONS, in his official capacity as Senior Official Performing the Duties of the Director of ICE; and JOSEPH B. EDLOW, in his official capacity as the Director of USCIS<br><br>    *Defendants*. | Case No. 3:26-cv-30031 |

**MEMORANDUM OF LAW IN SUPPORT OF INDIVIDUAL PLAINTIFFS' MOTION FOR LEAVE TO PROCEED UNDER PSEUDONYMS**

Plaintiffs Jean A., Hamad B., Mona C., Yasmine D., Sam E., and Abdo F. (together, "Individual Plaintiffs") are lawfully present refugees who have not yet obtained lawful permanent resident or "green card" status. They seek to shield their own identities, as well as the identities of family members who may be identified through Plaintiffs' participation in this lawsuit, from the public, because they fear that they will be targets of Defendants' recently announced policy to arrest and detain them while Defendants investigate them and make decisions on their applications

1

to adjust their status to lawful permanent residence.[1] The Court should grant this Motion for leave to proceed under pseudonyms pursuant to its inherent authority and Fed. R. Civ. P. 5.2(d).

With this Motion, Plaintiffs are contemporaneously filing: (1) a Class Action Complaint ("Complaint"); and (2) a Motion for a stay of agency action under 5 U.S.C. § 705. Plaintiffs' lawsuit challenges two DHS memoranda that authorize the warrantless arrest and mandatory detention of any lawfully present refugee who had not yet adjusted their status to lawful permanent resident ("LPR") one year after inspection, examination, and admission to the United States. In support of the present Motion, as well as the Motion for a stay of agency action under 5 U.S.C. § 705, Individual Plaintiffs are providing their declarations which recount their experiences and describe ongoing fears arising from Defendants' conduct; these declarations are also cited in the Memorandum of Law in Support of the Motion for a stay of agency action under 5 U.S.C. § 705.

The Court should grant Plaintiffs' motion. First, Plaintiffs meet the requirements to proceed in their lawsuit pseudonymously. The sensitive nature of this action and the high risk of harm that Plaintiffs will likely face if their identities are publicly revealed demonstrate the need for confidentiality, which far outweighs any countervailing interest in the public disclosure of Plaintiffs' identities. Second, Plaintiffs have made a strong showing that protecting their identifying information is necessary, narrowly tailored, and consistent with the interests of justice. Plaintiffs therefore respectfully request that the Court grant them leave to proceed under pseudonyms, and to file unredacted versions of certain materials under seal, only once an appropriate protective order has been entered.

---

[1] Plaintiffs propose to enter into negotiations with Defendants for a Protective Order that would shield Plaintiffs' identities from any government employees who may have influence or authority over the pending immigration benefit applications or detention of Plaintiffs or their families.

**BACKGROUND**

Plaintiffs' lawsuit challenges two DHS memoranda that together mandate the arrest and indefinite detention of refugees present in the United States for at least one year and who have not adjusted their status. The first memo, issued in secret on December 18, 2025, rescinded a 2010 Immigration and Customs Enforcement Policy Memo which directed that a refugee's failure to adjust status does not render them removable from the United States, or subject to detention. Exhibit 1. Then in February 18, 2026, Defendants Edlow and Lyons issued a memorandum titled "Detention of Refugees Who Have Failed to Adjust to Lawful Permanent Resident Status." Exhibit 2. The Refugee Detention Memo announces and purports to justify a national Refugee Detention Policy targeting lawfully present refugees who have not yet adjusted to LPR status for arrest and detention. The Memorandum makes clear that Defendants believe they are authorized to detain refugees as noncitizens "arrested without a warrant" prior to initiating immigration proceedings and that detention "is not limited to merely 48 hours" but rather will "last the reasonable length of time it takes to … determine whether he or she is admissible." Refugee Detention Memo at 4. Further, Defendants make clear that the purpose of these warrantless arrests and detentions is not only to make a determination on a refugee's adjustment application but also to reinvestigate the basis for the refugee's initial eligibility for refugee status. Edlow-Lyons Memorandum at 5–7.

Individual Plaintiffs and their family members, all unadjusted refugees, credibly fear imminent detention. Each faces a material risk that disclosure of identity-revealing information will increase the likelihood of detention, mistreatment, coercive interrogation, placement in immigration proceedings, or removal. Such identity-revealing information includes, but is not limited to, Plaintiffs' names; biographical, contact, or immigration-related details; the fact of any individual's participation in this lawsuit or connection to the claims asserted; and any other

information that could reasonably be used—alone or in combination with other data—to identify or locate a Plaintiff (or their family members) or to associate them with this action ("Protected Information").

Given the very real risk of retaliation by the same government actors Plaintiffs are suing—actors who possess the authority to detain, mistreat, and ultimately deport them—Individual Plaintiffsseek to prevent their Protected Information from falling into the hands of any officials, employees, agents, contractors, or representatives of ICE, USCIS, DHS (including any DHS component), or any other individuals involved in immigration enforcement, investigation, detention, or related actions, from learning their identities through public filings.

Requiring Individual Plaintiffs to disclose their identities or to publicly file sensitive information that could lead to their exposure before any protective order is entered, also could irreparably harm vulnerable and brave refugees who have come forward to vindicate their rights, and the rights of others.

**ARGUMENT**

Pseudonymity is appropriate because Individual Plaintiffs' claims raise sensitive, personal issues related to their refugee status; because they are challenging government action and face retaliatory harm; and because Individual Plaintiffs' claims address legal issues that do not require exposure of their identities at this stage; and because their proceeding in this action to vindicate their rights is in the public interest.

### I.    Individual Plaintiffs Merit a Grant of Pseudonymity.

The general rule is that complaints state the names of the parties. *See* Fed. R. Civ. P. 10(1). In the First Circuit, however, district courts are instructed to evaluate the "totality of the circumstances" to judge whether litigants fall into one or more of the "four general categories of

4

exceptional cases in which party anonymity will ordinarily be warranted," including: (1) cases where "a would-be Doe who reasonably fears that coming out of the shadows will cause him unusually severe harm (either physical or psychological)"; (2) "cases in which identifying the would-be Doe would harm 'innocent non-parties'"; whether identification threatened to reveal information of a sensitive and highly personal nature; (3) "cases in which anonymity is necessary to forestall a chilling effect on future litigants who may be similarly situated"; and (4) "suits that are bound up with a prior proceeding made confidential by law." *Doe v. Mass. Inst. of Tech.*, 46 F. 4th 61, 70-71 (1st Cir. 2022).

District courts have "broad discretion to quantify the need for anonymity … and whether that need outweighs the public's transparency interest." *Id*. at 72. The party seeking pseudonymity bears the burden of rebutting the presumption against it, and the "balance between a party's need for anonymity and the interests weighing in favor of open judicial proceedings may change as the litigation progresses.'" *Id. at 73* (quoting *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1069 (9th Cir. 2000)).

The Court need find that Plaintiffs fall into only one of these categories. But Plaintiffs here fall into all four, and they warrant a grant of pseudonymity.

A.      **Pseudonymity is Necessary Because Plaintiffs Face Unusually Severe Harm.**

Individual Plaintiffs face severe physical and psychological harm if their identities are exposed. As refugees who have not yet obtained lawful permanent resident status, they are the targets of a sweeping policy to arrest and detain them for an unspecified length of time while the government purportedly investigates their initial claim for refugee status and/or decides to act on their adjustment of status applications. Individual Plaintiffs either currently have pending applications for adjustment of status or have been preparing to file such applications. Jean A. Decl.

5

¶¶ 11-13; Hamad B. Decl. ¶ 8; Mona C. Decl. ¶ 7; Yasmine D. Decl. ¶ 7; Sam E. Decl. ¶ 6; Abdo F. Decl. ¶¶ 9-10. They and their families have reason to fear that revealing information about their immigration status will render them immediate, obvious targets for immigration enforcement actions by the U.S. government, including increased surveillance and targeting of family members, potential arrest or re-arrest, detention, and deportation solely because they have chosen to challenge the U.S. government's detention policies in federal court. *See* Jean A. Decl. ¶¶ 20–22; Hamad B. Decl. ¶ 16; Mona C. Decl. ¶ 17; Yasmine D. Decl. ¶ 23; Sam E. Decl. ¶¶ 11-12; Abdo F. Decl. ¶ 16. Further, public disclosure of their participation in this lawsuit could lead ICE to seek them out for arrest, detention, or re-detention, or to jeopardize those applications or lead DHS to other adverse action against them, such as denying pending applications for pretextual or other improper reasons.

The "danger of retaliation" is a "compelling ground" to allow the use of a pseudonym, particularly where plaintiffs challenge government action. *See Doe v. City of Chicago*, 360 F.3d 667, 669 (7th Cir. 2004); *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 190 (2d Cir. 2008). Courts across the country have permitted pseudonymity where individuals seek to vindicate rights against the government, particularly where disclosure could expose them to retaliatory or coercive conduct by the very authorities whose actions are being challenged. *See, e.g.*, *Hisp. Interest Coal. of Alabama v. Gov. of Alabama*, 691 F.3d 1236, 1247 (11th Cir. 2012); *Lozano v. City of Hazelton*, 620 F.3d 170, 195 (3d Cir. 2010), *vac'd on other grounds*, 131 S. Ct. 2958 (2011).

And Individual Plaintiffs' fears are not speculative. As one court explained, "the news is replete with reports of deportations, and the defendants have not assured the plaintiffs they will not retaliate against them." *CASA, Inc. v. Trump*, 793 F. Supp. 3d 703, 726 (D. Md. 2025); *see also Ozturk v. Trump*, 777 F. Supp. 3d 26, 29 (D. Mass. 2025). Other courts have specifically noted the

risks of "retaliatory arrest, deportation, or other adverse immigration actions" when noncitizens publicly litigate against the government. *Does 1–158 v. Rubio*, No. 25-3032, 2025 WL 2709775, at *2 (D.D.C. Sept. 23, 2025); *Doe #1 v. Noem*, No. 25-cv-317, 2025 WL 1207190, at *1 (W.D. Wis. Apr. 25, 2025) (recognizing "imminent arrest and detention" and "the possibility of being deported to a country other than their country of origin"). Courts have further observed that high-profile immigration litigants have faced abuse, intimidation, and harassment by private actors. *See Molina v. U.S. Dep't of Homeland Sec.,* No. 25-3417, 2025 WL 2800807, at *1 (D.D.C. Oct. 1, 2025) (granting motion to procced under pseudonyms where "Plaintiffs' participation in this litigation implicates their asylum applications and immigration statuses during a period of intense public scrutiny of immigration matters."). Accordingly, many courts have granted anonymity to noncitizens suing the government to protect against "harassment, intimidation, and/or doxing." *See, e.g., Doe v. Noem*, No. 2:25-cv-00633-DGE, 2025 WL 1295664, at *3 (W.D. Wash. May 5, 2025); *Doe 1 v. Noem*, No. 2:25-CV-00663, 2025 WL 1434925 (W.D. Wash. May 19, 2025); *Int'l Refugee Assistance Project v. Trump*, No. CV TDC-17-0361, 2017 WL 818255 (D. Md. Mar. 1, 2017).

Additionally, the threat to Plaintiffs is not limited to the United States. All fled their countries of nationality due to persecution, and making public the fact that they sought refuge in the United States would only make them more of a target upon their return. Courts consistently grant pseudonymity on the basis of a well-founded fear of violence in another country. *See, e.g., Doe v. U.S. Sec. of State,* 707 F. Supp. 3d 142 (D. Mass. 2023) (fear of harm from persecutors in home country merited grant of pseudonymity); *Doe v. Gonzales*, 484 F.3d 445, 446 (7th Cir. 2007) (fear of retaliation in home country sufficient to allow petitioner to litigate with a pseudonym); *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1068–69 (9th Cir. 2000) (recognizing

that potential retaliation against family members abroad supported pseudonymity); *Doe v. Immigr. & Naturalization Serv.*, 867 F.2d 285, 286 n.1 (6th Cir. 1989) (allowing pseudonymity to protect family abroad from retaliation).

Plaintiffs warrant pseudonymity under the first paradigm identified in *Doe v. Mass. Inst. of Tech.*, 46 F.4th at 71.

**B.     Identifying Plaintiffs Would Expose Innocent Non-Parties to Severe Harm.**

Publicly identifying Plaintiffs will compound the "risk of retaliatory physical or mental harm" to Plaintiffs' families, including minor children, who are "innocent non-parties." *James v. Jacobson*, 6 F.3d 233, 238 (4th Cir. 1993). Plaintiffs arrived in the United States as part of family groups. Jean A. Decl ¶¶ 1-6 (admitted as a refugee with mother and siblings); Hamad B. Decl. ¶ 4 (admitted with his wife and minor child); Mona C. Decl. ¶¶ 3-5 (admitted with husband and minor child); Yasmine D. Decl. ¶ 5 (admitted with husband and minor child). Others have minor children who are citizens of the United States. Hamad B. Decl. ¶ 2; Mona C. Decl. ¶ 15.

Exposure of Plaintiffs to retaliatory harm necessarily exposes their family members. The loss of a principal family member's refugee status causes their spouse and children to lose status as well. 8 U.S.C. § 1157(c)(4); 8 C.F.R. § 207.9. A decision to deny adjustment of status to any refugee will expose other family members identified through the refugee's adjustment application. And detention of one family member for any length of time causes significant harm to family members who lose companionship, income, and support. Mona C. Decl. ¶ 15; Yasmine D. Decl. ¶ 13-15. This harm can be severe for minor children. Mona C. Decl. ¶ 15; Yasmine D. Decl. ¶ 13–14.

Plaintiffs warrant pseudonymity under the second paradigm identified in *Doe v. Mass. Inst. of Tech.*, 46 F.4th at 71.

### C.    Identifying Plaintiffs Would Chill Future Litigants.

Plaintiffs bring a challenge to an unprecedented policy of mass warrantless arrest and unlimited detention of lawfully present refugees who face no charge of wrongdoing. Their claims raise significant constitutional concerns under the Fourth and Fifth Amendment. If they are not permitted to stay out of the public eye and protected from exposure, the willingness of refugees and other immigrants to challenge federal government activity in future litigation will unquestionably be chilled.

"Courts should be wary of taking actions that may chill the willingness of a party from bringing constitutional and statutory challenges." *Al Otro Lado, Inc. v. Nielsen, No.* 7-cv-02366, 2017 WL 6541446, at *7 (S.D. Cal. Dec. 20, 2017). This concern is particularly acute here, where the federal government is engaged in a highly publicized mass detention and deportation effort.  In similar cases, including in this federal district, courts have affirmed the need for pseudonymity in cases involving noncitizen plaintiffs. Requiring disclosure of their identities "would likely deter similarly situated individuals from litigating cases . . . in which the perceived risk of proceeding without a pseudonym—deportation—is precisely the harm [p]laintiffs seek to prevent by participating in the lawsuit." *Doe v. Noem*, No. 1:25-CV-10495-IT, 2025 WL 990635, at *2 (D. Mass. Apr. 2, 2025) (Talwani, J.); *see also Lozano*, 620 F.3d at 195.

### D.    Public Identification Would Expose Information Protected by Law.

Public identification would reveal information of a highly sensitive and personal nature: Plaintiffs' refugee statuses and histories of forced displacement. Immigration law already treats this information as confidential. DHS's own implementing regulations automatically protect refugee confidentiality and recognize and seek to mitigate the serious risks refugees face if their identities are made public. *See* 8 C.F.R. §§ 208.6(a)–(b). DHS recognizes that confidentiality is

necessary to "safeguard information that, if disclosed publicly, could subject the claimant to retaliatory measures by government authorities or non-state actors in the event that the claimant is repatriated, or endanger the security of the claimant's family members." *Anim v. Mukasey,* 535 F.3d 243, 253 (4th Cir. 2008) (quoting *USCIS Fact Sheet: Federal Regulations Protecting the Confidentiality of Asylum Applicants* (2005)); *see Refugee & Immigr. Ctr. for Educ. & Leg. Servs. v. Noem*, 2025 WL 579648, at *2 (D.D.C. Feb. 20, 2025). And courts routinely grant pseudonyms where the identities of litigants have already been protected in other legal proceedings. *See, e.g., Doe v. Town of Lisbon,* 78 F. 4th 38, 47 (1st Cir. 2023) (protecting identity of officer whose identity was made confidential in state proceeding ); *R.F.M. v. Nielsen*, 365 F. Supp. 3d 350, 371 (S.D.N.Y. 2019) (granting pseudonymity to non-minor plaintiffs challenging immigration authorities' denial of "special immigrant juvenile" status due to family court adjudications, in part because "related records from the New York Family Courts are protected by law").

The presumption of necessary confidentiality has particular force here, where Individual Plaintiffs have already been granted refugee status by the U.S. government in recognition of the persecution they or their family members faced or were likely to face in their countries of nationality. The Complaint reveals this information, as well as the fact that Plaintiffs, and others similarly situated, have been or risk being seized, detained, and interrogated about the basis of their refugee claims. *E.g.,* Hamad B. Decl. ¶¶ 9-12.

Plaintiffs warrant pseudonymity under the fourth paradigm identified in *Doe v. Mass. Inst. of Tech.*, 46 F.4th at 71.

## II.    Pseudonymity Poses No Threat of Unfairness to Defendants.

Allowing Plaintiffs to proceed pseudonymously will not prejudice Defendants or compromise fundamental fairness. Plaintiffs' specific identities are not relevant to any of the issues

in this case, which challenges a broadly applicable government policy. Plaintiffs will share their true identities confidentially with Defendants' attorneys and others whom the Court finds are necessary for the just resolution of this litigation, subject to an appropriate protective order.

Plaintiffs' Motion requests anonymity only to shield sensitive information from the public and Defendants themselves, as well as any officials, employees, agents, contractors, or representatives of ICE, USCIS, DHS (including any DHS component), or any other federal entities involved in immigration enforcement, investigation, detention, or related actions. Defendants will be able to litigate at every stage of this action without impediment. There is no prejudice to Defendants that would countervail the need for Plaintiffs' anonymity.

**III.    The Public Interest Is Fully Served Without Disclosure of Plaintiffs' Identities.**

The public interest is fully served without disclosure of Plaintiffs' names. "[L]awsuits that enforce constitutional and statutory rights benefit the public." *Al Otro Lado, Inc.*, 2017 WL 6541446, at *7. "Indeed, the public has an interest in such cases being decided on the merits." *Id.* (citing *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1073 (9th Cir. 2000)).

Individual Plaintiffs' identities are incidental to their claims, which challenge the legality of government detention practices, not the credibility or personal circumstances of any particular Individual Plaintiff. If the Court grants this motion, the public still will have access to the parties' legal arguments, the factual allegations, and the Court's rulings. *Sealed Plaintiff v. Sealed Defendant #1*, 537 F.3d 185, 190 (2d Cir. 2008) ("[B]ecause of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigants' identities." (citation omitted)); *Beilarus1 v. Mayorkas*, No. 24-cv-01925, 2025 WL 104387, at *2 (W.D. Wash. Jan. 15, 2025) (finding public interest weighed in favor of allowing asylum applicants to proceed anonymously where the central issues raised in the case was a legal challenge to the delayed adjudication of asylum applications).

11

Requiring disclosure of Individual Plaintiffs' identities in this context would ultimately deter, not advance, the public interest. If Individual Plaintiffs were required to proceed under their full names, the message to others similarly situated would be unmistakable: speaking up comes at an enormous personal cost. That outcome would deter the very individuals most affected by unlawful government action from seeking judicial review, insulating such conduct from meaningful challenge. Requiring disclosure in these circumstances would undermine the public interest—particularly where, as here, Individual Plaintiffs seek to vindicate their own rights and those of similarly situated refugees with no realistic alternative means of redress.

There is thus no risk that "disguising plaintiffs' identities will obstruct public scrutiny of the important issues in this case." *Advanced Textile Corp.*, 214 F.3d at 1072 (9th Cir. 2000)); *Doe v. Kamehameha Schs./Bernice Pauahi Bishop Est.*, 596 F.3d 1036, 1043 (9th Cir. 2010) ("it is difficult to see how disguising plaintiffs' identities will obstruct public scrutiny of the important issues in this case.") (internal citation omitted). In short, "any public interest in disclosing the identity of the plaintiff is significantly outweighed by the threat of retaliation that public disclosure of the plaintiffs' identities might entail." *O.M.G. v. Wolf*, No. 20-CV-786 (UNA), 2020 WL 12956895, at *2 (D.D.C. Mar. 23, 2020). Indeed, the public interest is served by permitting this case to go forward with appropriate protections for Plaintiffs. *See Gonzalez v. Gor*, No. CV 25-1508 (MAJ), 2025 WL 2813829, at *389 (D.P.R. Oct. 3, 2025) (holding a strong public interest exists in ensuring government institutions "operate[] within the confines of the law[.]")

## CONCLUSION

In light of the substantial risks that Individual Plaintiffs face and the minimal value to the public of their identities, the balance of interests and the totality of the circumstances weighs

overwhelmingly in favor of allowing Individual Plaintiffs to proceed under pseudonyms. Safeguarding their names from disclosure is necessary to ensure that Individual Plaintiffs can safely bring this case without further endangering themselves and their families.

DATED: February 27, 2026

Ghita Schwarz*
Guadalupe V. Aguirre*
Mevlüde Akay Alp*
Kimberly Grano*
Pedro Sepulveda*
**INTERNATIONAL REFUGEE ASSISTANCE PROJECT**
One Battery Plaza, 33rd floor
New York, New York 10004
Telephone: (646) 939-9169
Facsimile: (516) 324-2267
gschwarz@refugeerights.org
laguirre@refugeerights.org
makayalp@refugeerights.org
kgrano@refugeerights.org
psepulveda@refugeerights.org

Dalia Fuleihan*
**INTERNATIONAL REFUGEE ASSISTANCE PROJECT**
P.O. Box 47611
Chicago, IL 60647
Telephone: (646) 740-6271
Facsimile: (516) 324-2267
dfuleihan@refugeerights.org

*/s/ Kali Schellenberg*
Kali Schellenberg (MA BBO No. 694875)
Erez Reuveni* (CA Bar No. 264124)
Jennie L. Kneedler* (DC Bar No. 500261)
Ryan Cooper* (DC Bar No. 1645301)
Steven Y. Bressler* (DC Bar No. 482492)
Robin F. Thurston* (DC Bar No. 1531399)
**DEMOCRACY FORWARD FOUNDATION**
P.O. Box 34553
Washington, DC 20043
Phone: (202) 573-7950 (Schellenberg)
kschellenberg@democracyforward.org
ereuveni@democracyforward.org
jkneedler@democracyforward.org
rcooper@democracyforward.org
sbressler@democracyforward.org
rthurston@democracyforward.org

*Counsel for All Plaintiffs*

* Motion to appear *pro hac vice* forthcoming