**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| JEAN A., *et al.*, | |
| *Plaintiffs*, | |
| v. | Case No. 3:26-cv-30031-RGS |
| KRISTI NOEM, in her official capacity as Secretary of Homeland Security, *et al.*, | |
| *Defendants*. | |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF CLASS COUNSEL

## TABLE OF CONTENTS

Introduction ........................................................................................................................1

Background ........................................................................................................................2

Legal Standard ..................................................................................................................7

Argument ...........................................................................................................................8

    I.        The Proposed Class Meets the Requirements of Rule 23(a) ..................................9

           A.      The Proposed Class Satisfies the Numerosity Requirement. .......................9

           B.      The Proposed Class Satisfies the Commonality Requirement. ..................10

           C.      The Proposed Class Satisfies the Typicality Requirement. .......................12

           D.      The Proposed Class Representatives and Class Counsel Satisfy the Adequacy Requirement. ............................................................................14

    II.      The Proposed Class Meets the Requirements of Rule 23(b)(2). ...........................16

Conclusion .......................................................................................................................17

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Andrews v. Bechtel Power Corp.*,
    780 F.2d 124 (1st Cir. 1985)..................................................................................14, 15

*Bowers v. Russell*,
    766 F. Supp. 3d 136 (D. Mass 2025) ..........................................................................13

*DeRose v. Massachusetts Bay Commuter Rail Co.*,
    694 F. Supp. 2d 87 ........................................................................................................9

*Dionne v. Bouley*,
    757 F.2d 1344 (1st Cir. 1985)......................................................................................17

*In re Eaton Vance Corp. Sec. Litig.*,
    220 F.R.D. 162 (D. Mass. 2004)....................................................................................8

*In re Evergreen Ultra Short Opportunities Fund Secs. Litig.*,
    275 F.R.D. 382 (D. Mass. 2011)..................................................................................14

*Garcia-Rubiera v. Calderon*,
    570 F.3d 443 (1st Cir. 2009)...............................................................................9, 10, 13

*Gomes v. Acting Secretary, U.S. Dep't of Homeland Security*,
    561 F. Supp. 3d 93 (D.N.H. 2021)..........................................................................13, 14

*Guerrero Orellana v. Moniz*,
    808 F. Supp. 3d 167 (D. Mass. 2025) ...................................................................9, 12, 13

*In re Loestrin 24 Fe Antitrust Litig.*,
    2019 WL 3214257 (D.R.I. July 29, 2019) ...................................................................10

*Mantha v. QuoteWizard.com, LLC*,
    347 F.R.D. 376 (D. Mass. 2024)............................................................................10, 15

*Matamoros v. Starbucks Corp.*,
    699 F.3d 129 (1st Cir. 2012)..........................................................................................8

*Matamoros v. Starbucks Corp.*,
    2011 WL 2555760 (D. Mass. Feb. 8, 2011) ................................................................11

*McCuin v. Sec'y of Health & Hum. Servs.*,
    817 F.2d 161 (1st Cir. 1987)..........................................................................................9

*McKenna v. First Horizon Home Loan Corp.*,
   475 F.3d 418 (1st Cir. 2007)................................................................................17

*Muniz v. XPO Last Mile, Inc.*,
   342 F.R.D. 189 (D. Mass. 2022)..........................................................................12

*Ouadani v. Dynamex Operations E., LLC*,
   405 F. Supp. 3d 149 (D. Mass. 2019) ............................................................13, 14

*Overka v. American Airlines, Inc.*,
   265 F.R.D. 14 (D. Mass. 2010)............................................................................11

*Parent/Prof'l Advocacy League v. City of Springfield*,
   934 F.3d 13 (1st Cir. 2019)..................................................................................11

*Payne v. Goodyear Tire & Rubber Co.*,
   216 F.R.D. 21 (D. Mass. 2003).......................................................................12, 13

*In re Pharm. Indus. Average Wholesale Price Litig*,
   230 F.R.D. 61 (D. Mass. 2005)............................................................................14

*Powers v. Receivables Performance Mgmt., LLC*,
   801 F. Supp. 3d 17 (D. Mass. 2025) ....................................................................13

*Reid v. Donelan*,
   297 F.R.D. 185 (D. Mass. 2014).........................................................................9, 10

*Rolland v. Cellucci*,
   1999 WL 34815562 (D. Mass. Feb. 2, 1999) ......................................................17

*Swack v. Credit Suisse First Boston*,
   230 F.R.D. 250 (D. Mass. 2005)...............................................................10, 14, 15

*Tassinari v. Salvation Army*,
   349 F.R.D. 10 (D. Mass. 2025).............................................................................16

*In re Volkswagen*,
   2010 WL 3769259 (D. Mass. Sept. 22, 2010) ......................................................11

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011).........................................................................................1, 8

**Statutes**

8 U.S.C. § 1101...................................................................................................2, 3

8 U.S.C. § 1157...................................................................................................2, 3

8 U.S.C. § 1159.......................................................................................................3

Pub. L. No. 96-212, 94 Stat. 102 (1980)........................................................................2

**Other Authorities**

8 C.F.R. § 207 ............................................................................................................2, 3

8 C.F.R. § 209 ...............................................................................................................3

5 Moore's Fed. Prac. § 23.24 ......................................................................................12

Arelis R. Hernández, *New DHS Memo Outlines Plan to Detain Refugees for
   Further Vetting*, Wash. Post (Feb. 18, 2026) .............................................................9

Fed. R. Civ. P. 23 ..............................................................2, 7, 8, 9, 10, 12, 14, 16, 17

**INTRODUCTION**

The individual Plaintiffs bring this lawsuit on behalf of themselves and others similarly situated to challenge Defendants' cruel, indiscriminate policy of subjecting lawfully admitted refugees to warrantless arrest and potentially indefinite, punitive, and unlawful detention. The proposed class consisting of all individuals with refugee status who have not yet adjusted to lawful permanent resident ("LPR") status and who have been or will be detained pursuant to the Refugee Detention Policy satisfies both Federal Rules of Civil Procedure 23(a) and (b)(2) and should be certified.

This action is a paradigmatic class action. The unlawful adoption of Defendants' Refugee Detention Policy operates as a categorical rule against a defined group of refugees who have not yet adjusted their status, without any room for individualized assessment. Defendants' conduct applies uniformly to every proposed class member, and the relief sought would apply across the entire proposed class and resolve all class members' claims in "one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

The proposed class satisfies Rule 23(a)'s requirements for the following reasons: (i) *numerosity*: it comprises thousands of individuals and will continue to grow as new members are added on a rolling basis, making joinder impracticable; (ii) *commonality*: the legality of Defendants' Refugee Detention Policy presents common questions of law and fact; (iii) *typicality*: the individual Plaintiffs' claims arise from Defendants' issuance of the Refugee Rescission Memo and Refugee Detention Memo and adoption and enforcement of the Refugee Detention Policy and seek the same relief as the class, making individual Plaintiffs' claims typical of all class members; and (iv) *adequacy*: the individual Plaintiffs and their experienced undersigned counsel will fairly and adequately protect the class.

1

The proposed class further satisfies Rule 23(b)(2) because the individual Plaintiffs seek relief from Defendants' adoption and enforcement of the Refugee Detention Policy that applies generally to the class, and the requested vacatur and corresponding relief would resolve the claims of all class members in a single, indivisible remedy.

Accordingly, the individual Plaintiffs respectfully request that the Court certify the proposed class, appoint individual Plaintiffs as Class Representatives, and appoint the undersigned counsel as Class Counsel.

<strong>BACKGROUND</strong>

### A.    Background

The Refugee Act of 1980 embodies the U.S. commitment to humanitarian assistance for those fleeing persecution. Pub. L. No. 96-212, 94 Stat. 102 (1980). In enacting the Refugee Act, Congress sought to "provide a permanent and systematic procedure for the admission . . . of refugees of special humanitarian concern to the United States, and to provide comprehensive and uniform provisions for the effective resettlement and absorption of those refugees who are admitted." *Id.* § 101(b). A "refugee" is a person facing displacement from his or her country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion. *See* 8 U.S.C. § 1101(a)(42).

The Refugee Act sets out detailed policies and procedures governing refugee admission and resettlement in the United States. *See* Refugee Act § 2017. The DHS Secretary is authorized to admit to the United States "any refugee who is not firmly resettled in any foreign country, is determined to be of special humanitarian concern to the United States, and is admissible . . . as an immigrant." 8 U.S.C. § 1157(c)(1); *see* 8 C.F.R. §§ 207.1-207.7. A refugee's spouse or child may

2

be entitled to admission even without meeting the statutory definition of a refugee. 8 U.S.C. § 1157(c)(2)(A).

An individual's refugee status may be terminated only if immigration authorities "determine[] that the [non-citizen] was not in fact a refugee within the meaning of section 1101(a)(42) of this title at the time of the [noncitizen's] admission." *Id.* § 1157(c)(4); 8 C.F.R. § 207.9. Before refugee status is terminated, U.S. Citizenship and Immigration Services ("USCIS") must notify the individual in writing of its intent to terminate their refugee status, and the individual has 30 days from the date notice is served upon them to present evidence to show why their status should not be terminated. 8 C.F.R. § 207.9. If USCIS terminates refugee status, USCIS then processes the individual for removal, *id.*, meaning USCIS issues a notice to appear and initiates removal proceedings under 8 U.S.C. § 1229a.

Separately, Congress provided that all individuals admitted as refugees will have their status adjusted to that of a lawful permanent resident so long as their refugee admission has not been terminated and they are not found, upon inspection after one year, to be inadmissible to the United States. 8 U.S.C. § 1159(a); 8 C.F.R. § 209.1. By regulation refugees are required to apply to USCIS one year after entry in order for USCIS to determine their admissibility. 8 C.F.R. § 209.1(a)(1). Interviews are not mandatory and occur only case-by-case. *Id.* § 209.1(d). If the applicant is found to be admissible for permanent residence, USCIS must approve the application, admit the applicant for lawful permanent residence as of the date of the noncitizen's arrival in the United States, and issue proof of such status. *Id.* § 209.1(e); *see* 8 U.S.C. § 1159(a)(2). If USCIS denies the application, it must "notify an applicant of the right to renew the request for permanent residence" in full removal proceedings under 8 U.S.C. § 1229a. 8 C.F.R. § 209.1(e).

3

On May 10, 2010, consistent with this legislative scheme providing safety to those in need, U.S. Immigration and Customs Enforcement ("ICE") explicitly *prohibited* the detention and removal of refugees solely for failure to apply for adjustment of status in a policy directive. ¶¶ 6, 67;[1] ECF Nos. 1-5. However, on December 18, 2025, the then-Acting Executive Associate Director for ICE reversed this 15-year directive with a one-sentence memorandum (the "Refugee Rescission Memo"). ¶¶ 6, 104. Two months later, on February 18, 2026, the USCIS and ICE issued a memorandum purporting to justify the Refugee Rescission Memo and mandating warrantless arrests and potentially indefinite detentions of unadjusted refugees present in the U.S. for over a year (the "Refugee Detention Memo" and together with the Refugee Rescission Memo, the "Refugee Detention Policy"). ¶¶ 7, 105; ECF Nos. 1-4. Plaintiffs filed this lawsuit on February 27, 2026, and simultaneously sought a motion under Section 705 of the Administrative Procedure Act ("APA") to stay the enforcement of the Refugee Detention Policy. ECF Nos. 1, 9. On March 23, 2026, this Court granted Plaintiffs' motion for injunctive relief and entered a stay, not only concluding that Plaintiffs are "likely to succeed on the merits of this claim" but also holding that the "risk of unlawful and unnecessary detention" is a "quintessential example of irreparable harm." Order, ECF No. 51.

### B.    Named Plaintiffs

Plaintiffs Jean A., Hamad B., Mona C., Yasmine D., Sam E. and Abdo F. (the "Individual Plaintiffs") are refugees who have lived in the U.S. for over a year and who face the real and severe risks of warrantless arrest, sudden loss of work, exposure to baseless detention and deportation back to the very dangers from which they sought refuge, and the risk of forced separation from family members. ¶ 11. The six Individual Plaintiffs are not alone as there are more than 100,000

---

[1] A ¶__ reference is to Plaintiffs' Complaint. ECF No. 1.

4

unadjusted refugees in the United States facing the same, looming, and constant threat of arrest, detention, and deportation.  ¶ 112.

**Plaintiff Jean A.** was born in a Rwandan refugee camp and admitted to the United States with refugee status in September 2022, living in Massachusetts with his mother and three siblings in Massachusetts, also refugees. ECF No. 73 Ex. K (Jean A. Supp. Decl.) ¶¶ 1-2. Jean A. and his family all submitted their adjustment applications in spring of 2024 and have yet to hear back regarding an interview or a decision. *Id*. ¶¶ 11, 13. Jean A. lives in a constant state of fear that he will be arrested and detained indefinitely given the Refugee Detention Policy and USCIS's failure to act on his application. *Id.* ¶ 16.

**Plaintiff Hamad B.** was born in Iraq and fled with his wife to Turkey in 2014; he, his wife, and his son were admitted to the United States as refugees in May 2023. ECF No. 73 Ex. L (Hamad B. Supp. Decl.) ¶ 3-4. He and his family currently live in North Carolina. *Id*. ¶ 6. Hamad B., his wife, and young son all submitted applications for adjustment of status in March 2025 but have yet to hear back regarding an interview or a decision. *Id.* ¶ 8. Hamad B. and his wife also have a young daughter who is a U.S. citizen. *Id.* ¶ 2. In January 2026, Hamad B. was stopped by immigration officers and ultimately detained for more than three weeks in an out-of-state detention facility despite his lawful admission and status as a refugee. *Id.* ¶¶ 9-11. Because of the Refugee Detention Policy and the detention he has already suffered, Hamad B. lives in terror that he will be detained again, and that his wife and son will be arrested and detained while all of their applications for adjustment of status are pending. *Id.* ¶ 18.

**Plaintiff Mona C.** is Hamad B.'s wife and was admitted as a refugee to the United States in May 2023, after which she settled in North Carolina. ECF No. 73 Ex. M (Mona C. Suppl. Decl.) ¶ 2. Along with her husband and son, Mona C. applied for adjustment of status in March 2025 and

has yet to hear back regarding an interview or decision. *Id.* ¶ 7. Mona C. relies financially on her husband and suffered from a loss of income when he was detained and held in another state for three weeks. *Id.* ¶¶ 8-16. Because of the Refugee Detention Policy and the devastating experience her family had when Hamad B. was detained, Mona C. lives in constant fear that she—and her family—will be arrested and no one will be there to care for her children, one of whom is a U.S. citizen with a serious illness. *Id.* ¶¶ 6, 19, 21.

**Plaintiff Yasmine D.** was born in Iraq and is settled in Texas with her husband and son after they were admitted to the United States as refugees in April 2023. ECF No. 73 Ex. N (Yasmine D. Supp. Decl.) ¶¶ 3, 5. She, with her family, applied for adjustment of status in March 2025. *Id.* ¶ 7. Yasmine D's husband was arrested by immigration officers at a Board Patrol checkpoint notwithstanding his efforts to show the officers documentation of his pending adjustment status. *Id.* ¶ 8. The officers took her husband's documents during the arrest and left Yasmine D.'s documentation in her husband's van, which was left abandoned. *Id.* ¶ 10. Because of her husband's detention, Yasmine D.'s son had nervous attacks and missed school, resulting in Yasmine D. having to miss work to care for her son and the consequent loss of her job. *Id.* ¶¶ 13-15. Because of the Refugee Detention Policy, Yasmine D. and her family live in constant fear that ICE will arrest, detain, and deport her husband, herself, or her son. *Id.* ¶¶ 17-21.

**Plaintiff Sam E.** was born in Afghanistan, admitted to the United States in October 2024, and resettled in Connecticut after fleeing Pakistan with his parents and four siblings. ECF No. 73 Ex. O (Sam E. Supp. Decl.) ¶ 1-5. He graduated from high school in June and is working. After waiting for qualified medical practitioners to complete the medical exams required for applying for adjustment of status, he and his family filed their applications with USCIS in June 2026. *Id.* ¶ 7. Because of the Refugee Detention Policy, Sam E. is terrified that he and his family will be

arrested, detained, separated from one another, and/or deported to either dangerous conditions in their home country of Afghanistan or a third country without support. ¶ 10-11.

**Plaintiff Abdo F.** was born in Sudan and admitted to the United States as a refugee after passing several interviews, medical exams, and security checks in May 2024. ECF No. 73 Ex. P (Abdo F. Supp. Decl.) ¶¶ 1-3. He resettled in Nebraska and enrolled in English classes. *Id*. ¶¶4-6. Abdo F. has taken great pains to complete his adjustment of status application and was finally able to submit an application in April 2026. *Id*. ¶¶ 9-11. Abdo F. has been diagnosed with Parkinson's disease, which requires treatment. *Id*. ¶¶ 5-7. Because of the Refugee Detention Policy, he lives in fear that he will be arrested and detained without access to treatment, which may result in loss of ambulatory function, or deported to Sudan, where his life would be at tremendous risk. *Id*. ¶¶ 16-18.

The Individual Plaintiffs seek to represent the proposed class consisting of themselves and others similarly situated who are facing the constant threat of arrest and indefinite detention under Defendants' Refugee Detention Policy.[2]

## LEGAL STANDARD

A party seeking class certification must satisfy Rule 23(a)'s requirements—numerosity, commonality, typicality, and adequacy—and one subsection of Rule 23(b). Fed. R. Civ. P. 23(a),

---

[2] Plaintiffs International Institute of New England ("IINE") and Jewish Family Service of Western Massachusetts ("JFS-WMA") (together, the "Organizational Plaintiffs") are also named Plaintiffs in this lawsuit; however, only the Individual Plaintiffs are seeking to represent the class members. The Organizational Plaintiffs are non-profit social service organizations whose core missions include serving resettled refugees. IINE is the oldest organization exclusively serving refugees and immigrants in New England, providing life-saving assistance, including food distribution, to refugee clients. ¶ 30. Similarly, JFS-WMA is one of the largest agencies serving refugees in Massachusetts, providing critical services to thousands of clients. ¶ 33. Both must wrestle with real and harsh reality of depletion and diversion of resources to address the ever-growing crisis of mass interrogation, arrest, and indefinite detention that their clients—resettled refugees—face in light of Defendants' Refugee Detention Policy. ¶ 11.

(b). Under Rule 23(a), a class may be certified when: (i) the class is so "numerous that joinder of all members is impracticable"; (ii) there are common questions of law or fact; (iii) the class representatives' claims are typical of the class; and (iv) the representatives' representation of the class is adequate. Fed. R. Civ. P. 23(a); *see e.g.*, *Matamoros v. Starbucks Corp.*, 699 F.3d 129, 138 (1st Cir. 2012). Rule 23 "is given liberal rather than restrictive construction, and courts are to adopt a standard of flexibility." *In re Eaton Vance Corp. Sec. Litig.*, 220 F.R.D. 162, 170 (D. Mass. 2004) (internal citation omitted).

Here, Plaintiffs seek certification under Rule 23(b)(2), which applies when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). The crux of Rule 23(b)(2) is the "indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Dukes*, 564 U.S. at 360.

## ARGUMENT

The proposed class satisfies Rule 23(a)'s requirements of numerosity, commonality, typicality, and adequacy. The certification of the proposed class is proper under Rule 23(b)(2) because Plaintiffs seek indivisible relief—a declaration that the Refugee Rescission Memo and Refugee Detention Memo are, inter alia, contrary to law; a permanent cessation of the implementation of the Refugee Rescission Memo, Refugee Detention Memo, and Refugee Detention Policy; and vacatur of the Refugee Rescission Memo and Refugee Detention Memo pursuant to 5 U.S.C. § 706—that would resolve the claims of all class members in one fell swoop.

8

**I.       The Proposed Class Meets the Requirements of Rule 23(a).**

**A.       The Proposed Class Satisfies the Numerosity Requirement.**

Plaintiffs meet the numerosity requirement, which requires that the proposed class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The First Circuit recognizes that classes of forty or more members satisfy the "low threshold" of numerosity, and that this requirement is further met when plaintiffs seek only injunctive or declaratory relief. *Garcia-Rubiera v. Calderon*, 570 F.3d 443, 460 (1st Cir. 2009); *see DeRose v. Massachusetts Bay Commuter Rail Co.*, 694 F. Supp. 2d 87, 97 (noting that "[c]lasses of 40 or more have been found to be sufficiently numerous under Rule 23(a)(1)"); *Reid v. Donelan*, 297 F.R.D. 185, 189 (D. Mass. 2014) ("A plaintiff need not provide a precise number"). Further, a court may "draw reasonable inferences from the facts presented." *McCuin v. Sec'y of Health & Hum. Servs.*, 817 F.2d 161, 167 (1st Cir. 1987).

Here, the numerosity hurdle is easily met. The estimated more than 100,000 refugees in the United States who have not yet adjusted to LPR status are subject to the Refugee Detention Policy and each would be a member of the proposed class. *See* Arelis R. Hernández & Teo Armus, *New DHS Memo Outlines Plan to Detain Refugees for Further Vetting*, Wash. Post (Feb. 18, 2026), https://www.washingtonpost.com/immigration/2026/02/18/trump-immigrants-refugees-minnesota-memo/ ("[A]dvocates estimate about 100,000 refugees have not [received green cards] and could be subject to detention under the new policy"); ¶ 112. This number dwarfs the First Circuit's "low threshold" of 40. *See Guerrero Orellana v. Moniz*, 808 F. Supp. 3d 167, 183 n.4 (D. Mass. 2025) (Saris, J.) (noting that "joinder of all class members would be impracticable because the specific composition of the class is in constant flux as the government makes additional arrests and class members' removal proceedings conclude"); *Calderon*, 570 F.3d at 460.

Further, Plaintiffs seek only declaratory and injunctive relief, which further relaxes this already low threshold. *See Reid*, 297 F.R.D. at 189 ("[T]he threshold may be relaxed when a party seeks only declaratory or injunctive relief, since the inclusion of future members increases the impracticability of joinder."). In addition, joinder is impracticable for several reasons, including the fact that proposed class members are dispersed across the country, lack resources to bring individual suits, and new class members can be added on a rolling basis. *See Swack v. Credit Suisse First Boston*, 230 F.R.D. 250, 259 (D. Mass. 2005) ("The difficulty that the size of the potential class poses for joinder is exacerbated by the geographical diversity of the class members, who are likely dispersed throughout the country."); *In re Loestrin 24 Fe Antitrust Litig.*, No. 13-2472-WES-PAS, 2019 WL 3214257, at *8 (D.R.I. July 29, 2019) (explaining that district courts may consider "judicial economy, the claimants' ability and motivation to litigate as joined plaintiffs, the financial resources of class members, the geographic dispersion of class members . . . and whether the claims are for injunctive relief or for damages" when determining if joinder is impracticable) (internal citation omitted). As such, numerosity is satisfied.

**B.      The Proposed Class Satisfies the Commonality Requirement.**

Plaintiffs meet the commonality requirement, which requires only that there are questions of law and fact common to the class. *See* Fed. R. Civ. P. 23(a)(2); *Calderon*, 570 F.3d at 460 (commonality and typicality are "easily met" where there are "questions of law or fact common to the class") (quoting Fed. R. Civ. P. 23(a)(2)). This low bar is met where even a single question of law or fact is common to the members. *See Mantha v. QuoteWizard.com, LLC*, 347 F.R.D. 376 (D. Mass. 2024) ("Satisfying commonality is seen as a low bar because a single common legal or factual issue can suffice.") (internal quotation marks and citations omitted). Commonality is readily met where, as here, a defendant's widespread policy or practice affects all members of the

proposed class. *See Matamoros v. Starbucks Corp.*, No. 08-10772-NMG, 2011 WL 2555760, at *2 (D. Mass. Feb. 8, 2011) (finding the question of whether "Starbucks' company-wide policy" violates the law to satisfy the "low" commonality requirement); *see also Overka v. American Airlines, Inc.*, 265 F.R.D. 14, 18 (D. Mass. 2010) ("Where, as here, implementation of the common scheme is alleged, the commonality requirement usually is satisfied." (collecting cases)); *cf. Parent/Prof'l Advocacy League v. City of Springfield*, 934 F.3d 13, 31 (1st Cir. 2019) (denying commonality where plaintiffs failed to identify a uniform policy or practice driving the alleged harm). The proposed class members "do not have to share identical claims"—rather, this requirement turns on whether a question is capable of class-wide resolution, which is the case here. *See In re Volkswagen*, No. 1:07–md–1790–JLT, 2010 WL 3769259, at *2 (D. Mass. Sept. 22, 2010).

This is a classic example of a case where the questions are common to all class members because of Defendants' illegal policy and practices. Specifically, Individual Plaintiffs' and all proposed class members' claims arise from the same action: ICE's adoption of the Refugee Detention Policy. The questions presented are common to the proposed class and present shared legal and factual issues, including:

- Whether Defendants' policy of detaining refugees solely based on their failure to adjust status within one year violates the INA, the APA, and the Constitution;

- Whether Defendants' policy of arresting and detaining unadjusted refugees regardless of whether they are removal or a flight risk violates the INA, the APA, and the Constitution;

- Whether the Refugee Rescission Memo and Refugee Detention Memo are arbitrary and capricious under the APA; and

- Whether the Refugee Rescission Memo and Refugee Detention Memo are invalid because they are legislative rules and DHS did not go through notice and comment procedures before implementing them, violating the Administrative Procedure Act.

11

Courts in this district previously found the commonality requirement met in a case where, as here, class members face harm from the same unlawful government policy. In *Guerrero Orellana*, the named plaintiff sought to certify a proposed class encompassing individuals who were subject ICE's policy of detaining noncitizens who qualify as applicants for admission to mandatory detention during their removal proceedings. 808 F. Supp. 3d at 178. There, the court held that the proposed class, composed of "members [who] are all detained without a bond hearing pursuant to the *same allegedly unlawful government policy*[,]" met the commonality requirement by sharing "a common question capable of class-wide resolution." *Id.* at 184.

Because in this case all issues presented derive from the same adoption and enforcement of Defendants' illegal Refugee Detention Policy and are not dependent on a proposed class member's individual circumstances—as any refugee who has been present for more than one year and has not yet adjusted status is at risk of indefinite detention—their resolution will determine the claims of each class member in a single stroke, satisfying Rule 23(a)(2). Accordingly, Rule 23(a)'s commonality requirement is met.

### C.     The Proposed Class Satisfies the Typicality Requirement.

Individual Plaintiffs' claims are typical of the proposed class and arise from the same adoption of Defendants' illegal Refugee Detention Policy. Courts in this district recognize that typicality is "not highly demanding" because it requires only that named plaintiffs' claims "share the same essential characteristics" as those of the class members. *Payne v. Goodyear Tire & Rubber Co.*, 216 F.R.D. 21, 26 (D. Mass. 2003) (quoting 5 Moore's Fed. Prac. § 23.24(4)); *see also Muniz v. XPO Last Mile, Inc.*, 342 F.R.D. 189, 197 (D. Mass. 2022) ("The typicality requirement, which tends to merge with the commonality requirement is not 'highly demanding because the claims only need to share the same essential characteristics, and need not be identical'"

12

(quoting *Payne*, 216 F.R.D. at 24-25)) (citation omitted); *Powers v. Receivables Performance Mgmt., LLC*, 801 F. Supp. 3d 17, 40 (D. Mass. 2025) (quoting *Payne*, 216 F.R.D. at 26). In other words, instead of demanding perfect symmetry, typicality is satisfied where the class representatives' injuries arise from the same events or course of conduct as those of the class members and their claims are likewise based on the same legal theories giving rise to class claims. *See Calderon*, 570 F.3d at 460 (holding that typicality was "easily met" where "Plaintiffs' claims arise from the same event or practice or course of conduct that gives rise to the claims of other class members, and are based on the same legal theory") (citation modified). Courts have recognized that this is not a demanding standard, and that some differences between class representatives and proposed class members do not defeat class certification so long as the members are bound by a common legal theory. *See Gomes v. Acting Secretary, U.S. Dep't of Homeland Security*, 561 F. Supp. 3d 93, 101 (D.N.H. 2021) ("The representative plaintiff's claims and those of absent class members need not be identical; they need only 'share the same essential characteristics.'" (quoting *Ouadani v. Dynamex Operations E., LLC*, 405 F. Supp. 3d 149, 162 (D. Mass. 2019))).

Here, the interests of the proposed class representatives and proposed class members are aligned as they fight for their freedom from unlawful detention. *See Guerrero Orellana*, 808 F. Supp. 3d at 186 (finding typicality where the claims "arise from the same governmental policy" and the named plaintiff "presses the same statutory claim on behalf of himself and the class as a whole"); *Bowers v. Russell*, 766 F. Supp. 3d 136, 148 (D. Mass 2025) ("The typicality requirement is designed to align the interests of the class and the class representatives so that the latter will work to benefit the entire class through the pursuit of their own goals.") (quoting *In re Pharm.*

*Indus. Average Wholesale Price Litig.*, 230 F.R.D. 61, 78 (D. Mass. 2005)) . They have suffered or will suffer the same injuries, including the threat of arrest and indefinite detention.

The claims of the proposed class representatives are typical of the proposed class and more than meet Rule 23(a)(3)'s low threshold. While differences can exist, every proposed class representative's claims arise from the same basic fact: Defendants' adoption of the Refugee Detention Policy. *See Gomes*, 561 F. Supp. 3d at 101 ("The representative plaintiff's claims and those of absent class members need not be identical; they need only 'share the same essential characteristics.'" (quoting *Ouadani*, 405 F. Supp. 3d at 162)). This is true for the Individual Plaintiffs who have applied for adjustment of status and have not received decisions on their applications and for class members who have not yet been able to apply for adjustment of status due to uncontrollable delays such as doctor availability, or who have not been detained. *See In re Evergreen Ultra Short Opportunities Fund Secs. Litig.*, 275 F.R.D. 382, 390 (D. Mass. 2011) ("[C]lass representatives' claims can be considered typical even where there is some factual variation among the claims of different class members."). Critically, each representative is a lawfully admitted refugee who has not yet adjusted to LPR status and who has either been detained or faces the threat of imminent detention. Accordingly, the typicality element is met.

> **D.**     **The Proposed Class Representatives and Class Counsel Satisfy the Adequacy Requirement.**

The Individual Plaintiffs and their proposed Class Counsel satisfy Rule 23(a)(4) because they will "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The First Circuit has articulated two requirements for adequacy: (i) the interests of the representative parties must not conflict with those of any of the class members; and (ii) the proposed counsel "is qualified, experienced and able to vigorously conduct the proposed litigation." *Andrews v. Bechtel Power Corp.*, 780 F.2d 124, 130 (1st Cir. 1985); *see Swack*, 230 F.R.D. at 265 . As to the first

prong, only a conflict that is "fundamental to the suit" will render the representative party inadequate. *Mantha*, 347 F.R.D. at 395 (explaining that "merely lacking identical interests is not enough for a representative party to be found inadequate"). As to the second prong, a showing that the proposed counsel is "qualified, experienced and able to vigorously conduct the proposed litigation" is sufficient. *Andrews*, 780 F.2d at 130; *see Swack*, 230 F.R.D. at 267 (finding adequacy when "counsel has broad-based experience in complex litigation").

Here, the proposed class representatives seek the same declaratory and injunctive relief as all class members. Their interests are fully aligned with the class, and there is no conflict. Each representative has demonstrated a commitment to pursuing this case by coming forward and filing this suit despite the risks inherent in challenging Defendants' enforcement actions. Further, each Individual Plaintiff understands the responsibilities of class representation and is committed to serving in that role. *See* ECF No. 73 Ex. K (Supp. Decl. Jean A. ¶¶ 19-23); Ex. L (Supp. Decl. of Hamad B. ¶¶ 18-22; Ex M (Supp. Decl. of Mona C) ¶¶ 21-26, Ex. N (Supp. Decl. of Yasmine D) ¶¶ 24-29; Ex. O (Supp. Decl. of Sam E.) ¶¶ 12-16; Ex. P (Supp. Decl. of Abdo F.) ¶¶ 19-24.

Further, Class Counsel is qualified, experienced, and able to conduct this litigation. Class Counsel includes attorneys from Democracy Forward Foundation ("DFF"), International Refugee Assistance Project ("IRAP"), and Allen Overy Shearman Sterling US LLP ("AOS"). This legal team brings decades of collective experience in litigating complex federal class actions on behalf of refugees and other noncitizens, as well as immigration law, the Administrative Procedure Act, and constitutional law. They have also demonstrated the ability to expend significant resources to investigate the claims and conduct the litigation. *See e.g.*, ECF No. 73 Ex. W (Decl. of Reuveni); Ex. X (Decl. of Nathanson); Ex. Y (Decl. of Schwarz). Class Counsel is well-qualified and adequately resourced to represent the interests of the class and prepared to zealously represent the

Individual Plaintiffs and all proposed class members throughout all stages of this litigation through trial. *See e.g.*, ECF No. 73 Ex. W (Decl. of Reuveni) ¶¶ 15-17; Ex. X (Decl. of Nathanson) ¶¶ 16-18; Ex. Y (Decl. of Schwarz) ¶ 26.

The Court should therefore find that Rule 23(a)(4) is satisfied, and that Individual Plaintiffs are qualified to represent the proposed class. Similarly, the Court should appoint Individual Plaintiffs' undersigned counsel as Class Counsel under Rule 23(g).

Plaintiffs are not aware of any conflicts of interest with the proposed class. Likewise, Class Counsel is not aware of any conflicts. The proposed Class Representatives and Class Counsel will fairly and adequately represent the proposed class.

## II.   The Proposed Class Meets the Requirements of Rule 23(b)(2).

In addition to satisfying Rule 23(a)'s four requirements, this action qualifies for certification under Rule 23(b)(2) because it challenges whether Defendants "[have] acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).[3]

This case is prime for Rule 23(b)(2) class certification. Defendants have adopted a single, categorical policy that applies across the entire proposed class which on its face does not require individualized treatment among class members who are targeted only for their common trait of being lawfully admitted refugees present more than one year in the United States who have not yet

---

[3] While ascertainability is typically considered an implied requirement in Rule 23(b)(3) class actions, Plaintiffs need not show ascertainability because that implied requirement "does not apply to classes seeking injunctive relief under Rule 23(b)(2)" where "notice to the members of a (b)(2) class is not required and the actual membership of the class need not therefore be precisely delimited." *Tassinari v. Salvation Army*, 349 F.R.D. 10, 32 n.17 (D. Mass. 2025) (citation modified).

adjusted their status. Every class member faces the same dire threat—warrantless arrest and indefinite detention based solely on the failure to adjust status within one year—and seeks the same relief. *See Rolland v. Cellucci*, No. CIV A 98–30208–KPN, 1999 WL 34815562, at *9 (D. Mass. Feb. 2, 1999) ("As the First Circuit has explained, if injunctive or declaratory relief is appropriate with respect to the whole class, certification is proper.") (citing *Dionne v. Bouley*, 757 F.2d 1344, 1356 (1st Cir. 1985))); *see also McKenna v. First Horizon Home Loan Corp.*, 475 F.3d 418, 427 (1st Cir. 2007) ("A Rule 23(b)(2) class ordinarily is used when broad, class-wide injunctive or declaratory relief is appropriate."). Further, Individual Plaintiffs and proposed class members do not seek monetary damages and instead seek injunctive relief to remedy the actual injury arising from, and the risk of, unlawful and unnecessary detention, which is, as this Court has already found, a "quintessential example of irreparable harm." Order, ECF No. 51.

The relief sought is inherently indivisible, as there is no way to grant relief to some class members and not others. Accordingly, Rule 23(b)(2) class certification is appropriate.

## CONCLUSION

For all the foregoing reasons, this Court should (i) certify the proposed class; (ii) appoint Individual Plaintiffs as Class Representatives; and (iii) appoint the undersigned counsel as Class Counsel.

Dated: July 24, 2026

By:
/s/ John Nathanson

Ghita Schwarz (NY Bar No. 3030087)*
Guadalupe Aguirre (NY Bar No. 5536107)*
Mevlüde Akay Alp (NY Bar No. 5149653)*
Kimberly Grano (NY Bar No. 5858808)*
Pedro Sepulveda (NY Bar No. 6198550)*
International Refugee Assistance Project
One Battery Plaza, 33rd Floor
New York, New York 10004
(646) 939-9169
gschwarz@refugeerights.org
laguirre@refugeerights.org
makayalp@refugeerights.org
kgrano@refugeerights.org
psepulveda@refugeerights.org

Dalia Fuleihan (IL Bar No. 6335082)*
International Refugee Assistance Project
P.O. Box 47611
Chicago, Il 60647
646-740-6271
dfuleihan@refugeerights.org

Erez Reuveni (CA Bar No. 264124)*
Jennie L. Kneedler (DC Bar No. 500261)*
Ryan Cooper (DC Bar No. 1645301)*
Kali Schellenberg (MA BBO No. 694875)
Steven Y. Bressler (DC Bar No. 482492)*
Robin F. Thurston (DC Bar No. 1531399)*
DEMOCRACY FORWARD FOUNDATION
P.O. Box 34553
Washington, DC 20043
202-316-9538
ereuveni@democracyforward.org
jkneedler@democracyforward.org
rcooper@democracyforward.org
kschellenberg@democracyforward.org
sbressler@democracyforward.org
rthurston@democracyforward.org

John Nathanson (NY Bar No. 2630697)*
Andrew Tannenbaum (NY Bar No. 3940434)*
Leila Siddiky (NY Bar No. 5225164)*
Allen Overy Shearman Sterling US LLP
599 Lexington Avenue
New York, NY 10022
212-848-4000
john.nathanson@aoshearman.com
andrew.tannenbaum@aoshearman.com
leila.siddiky@aoshearman.com

Emily Westridge Black (TX Bar No. 24060815)*
Allen Overy Shearman Sterling US LLP
300 West 6th Street
Austin, TX 78701
512-647-1909
emily.westridgeblack@aoshearman.com

Gideon J. Duke-Cohan (BBO# 716358)
Allen Overy Shearman Sterling US LLP
One Beacon Street
Boston, MA 02108
212-610-6353
gideon.duke-cohan@aoshearman.com

*Counsel for All Plaintiffs*
* Admitted *Pro Hac Vice*

18

**CERTIFICATE OF SERVICE**

I hereby certify that on this July 24, 2026, I caused the foregoing to be electronically filed with the clerk of the court for the U.S. District Court for the District of Massachusetts by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record, a true and correct copy of the foregoing instrument and all attachments.

/s/ John Nathanson
John Nathanson