**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| JEAN A.; HAMAD B.; MONA C.; YASMINE D.; SAM E.; ABDO F.; INTERNATIONAL INSTITUTE OF NEW ENGLAND; and JEWISH FAMILY SERVICE OF WESTERN MASSACHUSETTS,<br><br>Plaintiffs,<br><br>v.<br><br>MARKWAYNE MULLIN,[1] *in his official capacity as Secretary of the Department of Homeland Security*; UNITED STATES DEPARTMENT OF HOMELAND SECURITY; UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT; UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES, TODD LYONS, *in his official capacity as Senior Official Performing the Duties of the Director of ICE*; and JOSEPH B. EDLOW, *in his official capacity as the Director of USCIS*,<br>Defendants. | Civil Action No. 3:26-cv-30031-RGS |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF CLASS COUNSEL**

Defendants, by and through their counsel Leah B. Foley, United States Attorney for the District of Massachusetts, submit their Memorandum in Opposition to Plaintiffs' Motion for Class Certification and Appointment of Class Counsel ("Motion for Class Cert.") (ECF Doc. No. 72 & 74).

[1]Secretary of Homeland Security Markwayne Mullin has been automatically substituted for former Secretary Kristi Noem. Fed. R. Civ. P. 25(d).

## INTRODUCTION

The Court should deny Plaintiffs' motion to certify a class consisting "of all individuals with refugee status who have not yet adjusted to lawful permanent resident ("LPR") status and who have been or will be detained pursuant to the Refugee Detention Policy." (ECF Doc. No. 76 at 6).

As a threshold matter, Plaintiffs have failed to show Article III standing, and the Court lacks jurisdiction to certify the class.

Furthermore, even if the Court were to exercise jurisdiction, it should deny the Motion for Class Certification because Plaintiffs have failed to meet the requirements of Rule 23. Plaintiffs have failed to show numerosity. In addition, their purported class definition is overbroad, and Plaintiffs have not met their burden of showing commonality of typicality of claims of defenses. For the same reasons, Plaintiffs have not shown that the proposed class representatives would adequately represent the class. Finally, the putative class is not certifiable under Rule 23(b)(2).

## BACKGROUND

### A. Background on the Current Refugee Policy

When a refugee is admitted into the United States, that admission is conditional. After the refugee has been present in the United States for one year, he or she must "return or be returned" to Department custody and be re-vetted for "inspection and admission" as a lawful permanent resident. 8 U.S.C. § 1159(a). Every admitted refugee "is required to apply to USCIS one year after entry in order for USCIS to determine his or admissibility. . . ." 8 C.F.R § 209.1(a). This application must be submitted in accordance with applicable form instructions, and the relevant application is Form I-485, Application to Register Permanent Residence or Adjust Status. 8 C.F.R § 209.1(b).

Despite its clear text, § 1159(a)'s requirement of a return has been subject to differing interpretations.

**<u>Nov. 9, 2001: Cooper Memo</u>**

In a Memorandum of November 9, 2001, Bo Cooper, the General Counsel of the INS, advised that "Section 209(a)( I )(C) of the Act requires a refugee to submit to inspection and examination by the Service for admission to the United States as an immigrant at the end of the one-year period following the refugee's admission into the United States. A refugee who has not voluntarily submitted himself or herself for examination and inspection pursuant to an application for adjustment of status may be taken into custody by the Service for the purpose of such examination and inspection and, if found inadmissible, may be placed in removal proceedings." (USCIS_AR002).

**<u>May 10, 2010: Chaparro Memo</u>**

On May 10, 2010, James Chaparro, who was Director with ICE, issued Policy No. 11039.1: Detention of Refugees Admitted under INA § 207 Who Have Failed to Adjust to Lawful Permanent Resident Status. ("Chaparro Memo") (USCIS_AR021). Although the policy explained that, under INA § 209(a)(1), refugees who are physically present in the United States for at least one year are to return, or be returned, to the custody of DHS for inspection and examination, it restricted the legal authority of officers to maintain custody of refugees who failed to present themselves for inspection. (USCIS_AR021-22). Under the Chaparro Memo, failure by a refugee to obtain LPR status, by itself, was not treated as a basis for removal and was not considered a proper basis for detention. (USCIS_AR022). Furthermore, if an unadjusted refugee was arrested, DHS was required, within 48 hours, to either: (1) release the individual or (2) initiate removal proceedings by issuing a Notice to Appear. (USCIS_AR022). If it became apparent earlier that no

ground of inadmissibility or deportability applied, the individual was to be promptly released. (USCIS_AR022).

**<u>January 20, 2025: Executive Order 14163</u>**

On January 20, 2025, the President issued Executive Order ("EO") 14163, Realigning the United States Refugee Admissions Program, which suspends the U.S. Refugee Admissions Program ("USRAP") until the admission of refugees aligns with the interests of the United States. EO 14163 highlights that the United States needs to ensure public safety and national security are strongly considered in the administration of the USRAP and only admit refugees who can fully and appropriately assimilate into the United States. *Id.*

**<u>March 25, 2025: Stateside Review of Refugee Cases 2021-2024</u>**

On March 25, 2025, USCIS conducted a review of 31,000 recently individuals from Ecuador, El Salvador, Guatemala, Honduras, and Venezuela, who were admitted into the United States as refugees from 2021-2024. (USCIS_AR074-75). The review identified 1,597 cases (consisting of 3.735 aliens) with indicators of potential Public Safety concerns that are consistent with suspected gang membership. (USCIS_AR074). Out of the 14,633 (31,497 individuals) Stateside Refugee cases reviewed, 42.3% had been subject to insufficient questions about Potential Public Safety concerns, while 7.7 % had evidence of Public Safety concerns and 3.2% had strong evidence of Public Safety concerns. (USCIS_AR075).

**<u>December 18, 2025: Rescission of Chaparro Memo</u>**

On December 18, 2025, ERO's Acting Executive Associate Director Marcos Charles issued a memorandum to all Field Office Directors rescinding the Chaparro Memo, effectively immediately. ("Rescission Memo"). *Id.* The reason for this rescission was to act consistently with "the policy of the United States to protect its citizens from terrorist attacks and other national

security and public safety threats, including through screening and vetting protocols and procedures associated with visa adjudications and other immigration processes, as reflected in the December 16, 2025 Presidential Proclamation, *Restricting and Limiting the Entry of Foreign Nationals to Protect the Security of the United States*." *Id.*[2]

**February 18, 2026: Edlow Memo**

On February 18, 2026, USCIS Director Edlow and Acting ICE Director Lyons issued a Memorandum titled: "Detention of Refugees Who Have Failed to Adjust to Lawful Permanent Resident Status." ("Edlow Memo") (USCIS_AR077-83). The Edlow Memo noted that:

> USCIS and ICE have determined that prior policy decisions and operational guidance resulted in incomplete implementation of the requirements of section 209 of the Immigration and Nationality Act (INA), 8 U.S.C. § 1159, governing the conditional admission of refugees and their adjustment of status. In practice, refugees who did not file an application for adjustment or did not return for the required inspection and examination were allowed to remain in the United States without undergoing the full, congressionally mandated, second round of vetting. This created a population of conditional refugees who had not been fully re-screened, with associated public safety and national security risks.

(USCIS_AR077).

The Edlow Memo set forth the following new policy:

> When a refugee is admitted to the United States, the admission is conditional and subject to a mandatory review after one year of physical presence in the United States under INA§ 209(a)(l), 8 U.S.C. § 1159(a)(l ). At one year after admission, the refugee must return, or be returned, to Department of Homeland Security (DHS) custody for inspection and examination for admission as an LPR.

---

[2] In this Proclamation, the President, for reasons of national security, continued limitations on entry for nationals of certain countries and imposed new limitations on the entry of nationals of other countries. *See Restricting and Limiting the Entry of Foreign Nationals to Protect the Security of the United States*, White House, https://www.whitehouse.gov/presidential-actions/2025/12/restricting-and-limiting-the-entry-of-foreign-nationals-to-protect-the-security-of-the-united-states/.

- If the refugee does not voluntarily return, DHS will return the individual to custody (i.e., arrest and detain) for this purpose.

- DHS may maintain custody for the duration of the inspection and examination process.

> This detain-and-inspect requirement ensures that refugees are re-vetted after one year, aligns post-admission vetting with that applied to other applicants for admission, and promotes public safety.

(USCIS_AR078). The Edlow Memo confirmed that it was rescinding the Chapparo Memo and any other policies that conflict with the policies stated in the Edlow Memo. *Id*.

The Edlow Memo then forth extensive rationale for the policy change. In summary, it noted:

> [T]he changes are designed to better enforce the statutory requirement that aliens admitted as refugees who have been present in the United States for at least one year return or be returned to DHS custody for inspection and examination for admission as an LPR. They further reflect the public policy interest in thorough vetting of aliens admitted as refugees, including vetting for national security, public safety, and fraud-related issues. In making these changes, DHS considered any potential reliance interests, and as explained more fully below, DHS believes that any perceived interests are strongly outweighed by the public policy reasons described below.

(USCIS_AR078-79). The Memo then provided detailed explanations for the policy change. (USCIS_AR079-83).

### B. Procedural History

On February 27, 2026, Plaintiffs Jean A.; Hamad B.; Mona C.; Yasmine D.; Sam E.; Abdo F.; International Institute of New England; and Jewish Family Service of Western Massachusetts ("Plaintiffs") filed a Complaint for Vacatur, Preliminary and Permanent Injunctive Relief, and Declaratory Relief Under the Administrative Procedure Act and the Constitution against the Defendants in the above-captioned matter. (ECF Doc. No. 1).

Plaintiffs brought six counts. Count One alleged that the Refugee Detention Policy was contrary to law, in violation of the APA. (ECF Doc. No. 1 at 30-32). Count Two alleged that the Refugee Detention Policy was arbitrary and capricious, in violation of the APA. (ECF Doc. No. 1 at 32-33). Count Three alleged that the Refugee Detention Policy had not undergone the Notice and Comment procedural requirement in violation of the APA. (ECF Doc. 1 at 33-34). Count Four alleged that the Refugee Detention Policy failed to comply with the agency's own statutes and regulations, in violation of the APA and also the principles articulated in *United States ex rel. Accardi v Shaughnessy*, 347 U.S. 260 (1954) ("Accardi doctrine"). (ECF Doc. 1 at 34-35). Count Five alleged a violation of the Fourth Amendment. (ECF Doc. 1 at 35-36). Count Six alleged violation of the Due Process and Equal Protection Clauses of the Fifth Amendment. (ECF Doc. 1 at 36-38)

On February 27, 2026, Plaintiffs filed a Motion for Leave to Proceed Under Pseudonyms. (ECF Doc. No. 2) and also filed a Motion to Stay under APA Section 705. (ECF Doc. No. 9).

On March 23, 2026, the Court granted the Motion to Stay. (ECF No. 51). In addition, the Court granted the Motion to Proceed Under Pseudonyms. (ECF No. 52).

On May 8, 2026, the Court entered an Electronic Order directing Defendants to produce the Administrative Record by May 15, 2026, directing the parties to meet and confer, and setting forth a schedule for Summary Judgment Motions. (ECF No. 59). On or about May 8, 2026, Defendants produced to Plaintiffs the Certified Administrative Record ("CAR") for ICE. On or about May 15, 2026, Defendants produced to Plaintiffs the Certified Administrative Record ("CAR") for USCIS.

On May 29, 2026, the parties met and conferred over the CAR's and issues related to discovery. (ECF Doc. No. 60 at 1). The parties filed a Joint Motion requesting that the Court adopt

a proposed schedule by which the parties were to file Motions for Summary Judgment on the APA claims and *Accardi* claims only (Count I-IV) (i.e., the non-constitutional claims of the Complaint). *Id.* at 2.

On July 24, 2026, Plaintiffs filed their Motion for Summary Judgment. (ECF Doc. No. 72 & 74). On the same day, Plaintiffs also filed a Motion to Certify Class. (ECF Doc. No. 72 & 76).

## **LEGAL STANDARD FOR CLASS CERTIFICATION**

The class action is a departure from "the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) (internal quotations omitted). To justify such departure, proposed class representatives must possess the same interest and same injury as the class members. *See id.* "[A] party seeking to maintain a class action 'must affirmatively demonstrate his compliance' with Rule 23" and "'be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact,' typicality of claims or defenses, and adequacy of representation, as required[.]" *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (quoting *Wal-Mart Stores*, 564 U.S. at 350) (emphasis in original). In addition to satisfying these Rule 23(a) prerequisites, a plaintiff must demonstrate that the action fits within at least one of the categories in Rule 23(b). *See* Fed. R. Civ. P. 23(b)(1)-(3). Here, Plaintiffs seek certification under Rule 23(b)(2), which requires the movant to show that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Courts must rigorously analyze Rule 23's requirements, *Wal-Mart Stores*, 564 U.S. at 350-51, which requires more than accepting Plaintiffs' claims as pleaded. *See Eddlemon v. Bradley Univ.*, 65 F.4th 335, 338-39 (7th Cir. 2023). Plaintiffs "must

actually *prove*—not simply plead—that their proposed class satisfies each requirement of Rule 23," otherwise certification must be denied. *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 275 (2014).

## **ARGUMENT**

### I. **Plaintiffs Have Not Shown Article III Standing**

As a threshold matter, Plaintiffs have failed to show that all members of their putative class, which they define as "all individuals with refugee status who have not yet adjusted to lawful permanent resident ("LPR") status and who have been or will be detained pursuant to the Refugee Detention Policy," (ECF Doc. No. 76 at 6), have Article III standing. Article III, Section 2 of the Constitution requires that a party have standing to maintain an action in federal court. *See Raines v. Byrd*, 521 U.S. 811, 818 (1997). "The requisite elements of Article III standing are well established: A plaintiff must show (1) an injury in fact, (2) fairly traceable to the challenged conduct of the defendant, (3) that is likely to be redressed by the requested relief." *Fed. Election Comm'n v. Cruz*, 596 U.S. 289, 296 (2022). And when seeking prospective relief, like here, a plaintiff must demonstrate a "risk of harm [that] is sufficiently imminent and substantial." *Webb v. Injured Workers Pharmacy, LLC*, 72 F.4th 365, 375 (1st Cir. 2023) (internal quotations omitted). This burden is equally applicable in class action cases. As the Supreme Court has stated:

> That a suit may be a class action ... adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.

*Lewis v. Casey*, 518 U.S. 343, 357 (1996) (internal quotations omitted); *see TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021); *In re. Boston Scientific Corp. Erisa Litigation*, 254 F.R.D. 24, 28 (D. Mass. 2008).

Plaintiffs fail short of their burden in this case. Plaintiffs seek to certify a class of "all individuals with refugee status" "who have not yet adjusted to lawful permanent resident ("LPR") status" and "who have been or will be detained pursuant to the Refugee Detention Policy." (ECF Doc. No. 76 at 6). But they provide no evidence that all members of this putative class face an imminent threat of harm. For example, Plaintiffs state that the lead plaintiff Jean A. and his family have submitted their adjustment applications and are waiting to hear back. (ECF Doc No. 76 at 10). Until Jean A. and his family hear back, Plaintiffs allege that Jean A. "lives in a constant state of fear that he will be arrested and detained given the Refugee Detention Policy and USCIS's failure to act on his application." *Id.* But the Edlow Memo makes clear that "[r]efugees may be considered to have voluntarily returned to custody by submitting an application to adjust status and appearing at scheduled interviews or appointments pertaining to their adjustment of status application under INA § 209, 8 U.S.C. § 1159." (USCIS_AR079). In other words, the Edlow Memo does not mandate arrest and detention for a refugee in those circumstances. Thus, under the Memo's clear terms, Jean A., and those similarly situated, have only a speculative claim to future arrest and detention and therefore have no standing to challenge the Current Policy. The same is true of those who have already been detained. Past injury alone is insufficient for the purposes of prospective relief. *See Murthy v. Missouri*, 603 U.S. 43, 59 (2024).

In addition, there are multiple reasons aside from the Refugee Detention Policy, why a non-citizen individual could be subject to immigration detention. For example, a non-citizen could be subject to immigration detention if they are pending removal proceedings, have a final order of

removal, violate some other immigration status or condition of release, or engage in criminal behavior. If the injury is Plaintiffs' fear of detention, such injury is not likely to be redressed by the requested relief.

For these reasons, given Article III's requirements, the Court should not certify the requested class. *See Halvorson v. Auto-Owners Ins. Co.*, 718 F.3d 773, 778 (8th Cir. 2013) ("In order for a class to be certified, each member must have standing and show an injury in fact that is traceable to the defendant and likely to be redressed in a favorable decision.").

## II. <u>The Requirements for Class Certification are Not Met</u>

### A. Plaintiffs Fail to Meet the Numerosity Requirement

In their Motion for Class Certification, Plaintiffs state that "the numerosity hurdle is easily met" because there are "estimated more than 100,000 refugees in the United States who have not yet adjusted to LPR status [who] are subject to the Refugee Detention Policy and each would be a member of the proposed class." (ECF Doc. No. 76 at 14). However, to support this "100,000" number, Plaintiffs cite to paragraph 112 of their own Complaint which states, without further support, that "[o]n information and belief, over 100,000 unadjusted refugees are in the United States." Complaint ( ECF Doc. No. 1 ¶ 112). The only other source Plaintiffs cite is a Washington Post article from February 18, 2026, that states that "advocates" "estimate about 100,000 refugees have not [received green cards] and could be subject to detention under the new policy." (ECF Doc. No. 76 at 14). No further explanation is provided as to who these "advocates" are; how one is to judge their credibility, or on what basis aside from sheer speculation, these "advocates" are arriving at the 100,000 number. *But see Wal-Mart*, 564 U.S. at 350 ("A party seeking class certification must affirmatively demonstrate his compliance with the Rule.").

The Court should find that Plaintiffs fail to meet their burden of meeting the numerosity requirement for class certification.

**B. Plaintiff Class is Overbroad and Lacks Commonality and Typicality**

Under Rule 23, a class must be defined clearly. *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 657 (7th Cir. 2015). "To avoid vagueness, class definitions generally need to identify a particular group, harmed during a particular time frame, in a particular location, in a particular way." *Id.* at 660; *cf. Ad Hoc Comm. on Jud. Admin. v. Com. of Mass.*, 488 F.2d 1241, 1243 n.1 (1st Cir. 1973) (noting problems with vaguely-defined and broad classes). Having an inadequately defined or overbroad class often implicates multiple Rule 23 requirements, including typicality, commonality, and the standards for certifying an injunctive-relief class under Rule 23(b)(2).

Differences among the Plaintiffs' putative class members' claims to relief preclude a finding of commonality or typicality. Rule 23(a)(2) requires questions of law or fact common to the class. "Commonality requires the plaintiff to demonstrate that the class members 'have suffered *the same injury*.'" *Wal-Mart*, 564 U.S. at 350 (citation omitted). "This does not mean merely that they have all suffered a violation of the same provision of law." *Id.* (quoting *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 157 (1982)). Instead, the "claims must depend upon a common contention" that "is capable of classwide resolution—which means that [the] determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* Rule 23(a)(2) "is easy to misread, since [a]ny competently crafted class complaint literally raises common questions." *Wal-Mart Stores*, 564 U.S. at 349, 351 (citation and quotes omitted). "What matters to class certification . . . is not the raising of common questions—even in droves—but rather, the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.* at 350.

The commonality prong tends to merge with the requirement of typicality under Rule 23(a)(3), *see id*. at 350 n.5, because "the central inquiry in assessing whether a proposed class has 'typicality' is whether the class representatives' claims have the same essential characteristics as the claims of the other members of the class," *Garcia v. E.J. Amusements of New Hampshire, Inc.*, 98 F. Supp. 3d 277, 288 (D. Mass. 2015).

Here, Plaintiffs seek to certify the following proposed class: "all individuals with refugee status who have not yet adjusted to lawful permanent resident ("LPR") status and who have been or will be detained pursuant to the Refugee Detention Policy." (ECF Doc. No. 76 at 6). This class definition is overbroad.

The facts of each case differ. Plaintiffs' named representatives share the bare bones facts that they have applied for LPR status, are waiting to hear back and live in a state of fear about being detained. (ECF Doc. 76 at 10-12). However, they also purport to represent a class that has not yet applied for LPR status. The Edlow Memo does not address whether detention is required for refugees who have already applied for adjustment status and are cooperating with USCIS notices to appear for biometric collection, interviews, etc. Instead, as explained above, the Memo provides that a refugee "may be considered to have voluntarily returned" when he submits his application for adjustment of status and appears at appointments scheduled thereafter. And, under the Memo, a refugee who has voluntarily returned is not required to be returned to DHS custody.

Thus, it is not the case that all members of the purported class, particularly those who have already applied for adjustment, are subject to mandatory arrest and detention under the Current Policy. Plaintiffs do not provide a way to determine who "will be detained" in the future, and, from the facts alleged about the putative class representatives, appear to think, contrary to the Edlow Memo, that those who have submitted their applications for adjustment of status and intend to

appear at any scheduled interview or appointment are subject to mandatory arrest and detention. Also, those who have been detained in the past are differently situated than those who may face detention in the future. And finally, each putative class member has different immigration circumstances, which could translate into different statutes, beyond § 1159(a), authorizing arrest and detention, therefore affecting the appropriate analysis under the INA and the Constitution.

Likewise, for the reasons set forth above, Plaintiffs have failed to meet the typicality requirement under Rule 23(a)(3), that is, that the proposed class representatives have the same claims and defenses of the other members of the class.

### C. Plaintiff Fail to Show that Certification is Warranted under Rule 23(b)(2).

Finally, the putative class is not certifiable under Rule 23(b)(2). That provision "applies only when a single injunction or declaratory judgment would provide relief to each member of the class." *Wal-Mart*, 564 U.S. at 360. In other words, "key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Id.* (quotation omitted).

There is no such indivisibility here. Given the overbroad class definition, this Court would have to engage in individualized "mini-trials" just to determine which putative class members if any were actually facing a concrete, imminent threat of harm that justifies an injunction—a proposition that is fatal to (b)(2) certification. *See Harris v. Union Pac. R.R. Co.*, 953 F.3d 1030, 1038 (8th Cir. 2020). As a result, a court will be unable to adjudicate the claims in a class-wide manner, and Rule 23(b)(2) certification is unwarranted.

## **CONCLUSION**

WHEREFORE, Defendants respectfully request that the Court deny Plaintiffs' Motion for Class Certification.

Respectfully submitted,

LEAH B. FOLEY
United States Attorney

Dated: September 14, 2026

By: */s/ Shawna Yen*
Shawna Yen
Assistant United States Attorney
United States Attorney's Office
1 Courthouse Way, Suite 9200
Boston, MA 02210
Tel.: 617-748-3100
Email: Shawna.Yen@usdoj.gov

**CERTIFICATE OF SERVICE**

I, Shawna Yen, Assistant United States Attorney, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

Dated: September 14, 2026 By: */s/ Shawna Yen*
Shawna Yen
Assistant United States Attorney