**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

JEAN A.; HAMAD B.; MONA C.; YASMINE D.; SAM E.; ABDO F.; INTERNATIONAL INSTITUTE OF NEW ENGLAND; and JEWISH FAMILY SERVICE OF WESTERN MASSACHUSETTS,

Plaintiffs,

v.

MARKWAYNE MULLIN,[1] *in his official capacity as Secretary of the Department of Homeland Security*; UNITED STATES DEPARTMENT OF HOMELAND SECURITY; UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT; UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES, TODD LYONS, *in his official capacity as Senior Official Performing the Duties of the Director of ICE*; and JOSEPH B. EDLOW, *in his official capacity as the Director of USCIS*,

Defendants.

Civil Action No. 3:26-cv-30031-RGS

**LOCAL RULE 56.1 STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Defendants submit that there is no genuine dispute as to the following material facts:

1. INA § 209(a)(1), 8 U.S.C. § 1159(a)(1), provides that an alien is admitted to the United States with refugee status, who has been physically present in the United States for at least one year, and who has not acquired permanent resident status, "shall at the end of such year period, return or be returned to the custody of the Department of Homeland Security

[1] Secretary of Homeland Security Markwayne Mullin has been automatically substituted for former Secretary Kristi Noem. Fed. R. Civ. P. 25(d).

[("DHS")] for inspection and examination for admission to the United States as an immigrant in accordance with the provisions of sections 235, 240, 241." INA § 209(a)(1), 8 U.S.C. § 1159(a)(1).

2. INA § 207(c)(4), 8 U.S.C. § 1157(c)(4), provides that an alien's refugee status may be terminated by DHS if it is determined that the alien did not meet the refugee definition at INA § 101(a)(42), 8 U.S.C. § 1101(a)(42), at the time of admission. Upon termination of refugee status, the alien is processed for immigration proceedings under INA §§ 235, 240, 241, 8 U.S.C. § 1225, 1229a, 1231; 8 C.F.R. § 207.9.

3. INA § 235(b)(1), 8 U.S.C. § 1225(b)(1), mandates detention for certain applicants for admission processed for expedited removal, during the credible fear process, and for any further consideration of an application for asylum.

4. INA § 235(b)(2), 8 U.S.C. § 1225(b)(2), provides that "an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 240."

5. Refugees, upon admission, are provided notice that they must apply for adjustment of status to become lawful permanent residents (LPRs). This notice is provided on the USCIS website and may also come from CBP upon the refugee's admission at a U.S. Port of Entry or from nonprofit resettlement agencies who are charged by the U.S. Department of State through cooperative agreements to assist refugees. (USCIS_AR082; USCIS_AR068-073).

6. In a Memorandum of November 9, 2001, Bo Cooper, the General Counsel of the INS,

advised that "Section 209(a)(1)(C) of the Act requires a refugee to submit to inspection and examination by the Service for admission to the United States as an immigrant at the end of the one-year period following the refugee's admission into the United States. A refugee who has not voluntarily submitted himself or herself for examination and inspection pursuant to an application for adjustment of status may be taken into custody by the Service for the purpose of such examination and inspection and, if found inadmissible, may be placed in removal proceedings." (USCIS_AR002).

7. On May 10, 2010, James Chaparro, who was then a Director with ICE, issued Policy No. 11039.1: Detention of Refugees Admitted under INA § 207 Who Have Failed to Adjust to Lawful Permanent Resident Status. ("Chaparro Memo") (USCIS_AR021).

8. The Chaparro Memo stated that, under INA § 209(a)(1), refugees who are physically present in the United States for at least one year are to return, or be returned, to the custody of DHS for inspection and examination, but it restricted the legal authority of officers to maintain custody of refugees who failed to present themselves for inspection. (USCIS_AR021-22). Under the Chaparro Memo, failure by a refugee to obtain LPR status, by itself, was not treated as a basis for removal and was not considered a proper basis for detention. (USCIS_AR022). Furthermore, if an unadjusted refugee was arrested, DHS was required, within 48 hours, to either: (1) release the individual or (2) initiate removal proceedings by issuing a Notice to Appear. (USCIS_AR022). If it became apparent earlier that no ground of inadmissibility or deportability applied, the individual was to be promptly released. (USCIS_AR022).

9. On January 20, 2025, the President issued Executive Order ("EO") 14163, Realigning the United States Refugee Admissions Program, suspending the U.S. Refugee Admissions

Program ("USRAP") until the admission of refugees aligns with the interests of the United States. Further, EO 14163 stated that the United States needs to ensure public safety and national security are strongly considered in the administration of the USRAP and only admit refugees who can fully and appropriately assimilate into the United States. *Id.*

10. On March 25, 2025, USCIS conducted a review of 31,000 recently individuals from Ecuador, El Salvador, Guatemala, Honduras, and Venezuela, how were admitted into the United States as refugees from 2021-2024. (USCIS_AR074-75). The review identified 1,597 cases (consisting of 3.735 aliens) with indicators of potential Public Safety concerns – namely tattoos that are consistent with suspected gang membership. (USCIS_AR074). Out of the 14,633 (31,497 individuals) Stateside Refugee cases reviewed, 42.3% had been subject to insufficient questions about Potential Public Safety concerns, while 7.7 % had evidence of Public Safety concern and 3.2% had strong evidence of Public Safety concern. (USCIS_AR075).

11. On December 18, 2025, ERO's Acting Executive Associate Director Marcos Charles issued a memorandum to all Field Office Directors rescinding the Chaparro Memo, effectively immediately. ("Recission Memo"). (USCIS_AR076). The reason for this rescission was to act consistently with "the policy of the United States to protect its citizens from terrorist attacks and other national security and public safety threats, including through screening and vetting protocols and procedures associated with visa adjudications and other immigration processes, as reflected in the December 16, 2025 Presidential Proclamation, *Restricting and Limiting the Entry of Foreign Nationals to Protect the Security of the United States.*" *Id.*

12. On February 18, 2026, USCIS Director Edlow and Acting ICE Director Lyons issued a Memorandum titled: "Detention of Refugees Who Have Failed to Adjust to Lawful

Permanent Resident Status." ("Edlow Memo") (USCIS_AR077-83). The Edlow Memo noted that:

> USCIS and ICE have determined that prior policy decisions and operational guidance resulted in incomplete implementation of the requirements of section 209 of the Immigration and Nationality Act (INA), 8 U.S.C. § 1159, governing the conditional admission of refugees and their adjustment of status. In practice, refugees who did not file an application for adjustment or did not return for the required inspection and examination were allowed to remain in the United States without undergoing the full, congressionally mandated, second round of vetting. This created a population of conditional refugees who had not been fully re-screened, with associated public safety and national security risks.

(USCIS_AR077).

13. The Edlow Memo set forth the following new policy:

> When a refugee is admitted to the United States, the admission is conditional and subject to a mandatory review after one year of physical presence in the United States under INA§ 209(a)(l), 8 U.S.C. § 1159(a)(1). At one year after admission, the refugee must return, or be returned, to Department of Homeland Security (DHS) custody for inspection and examination for admission as an LPR.
>
> - If the refugee does not voluntarily return, DHS will return the individual to custody (i.e., arrest and detain) for this purpose.
> - DHS may maintain custody for the duration of the inspection and examination process.
>
> This detain-and-inspect requirement ensures that refugees are re-vetted after one year, aligns post-admission vetting with that applied to other applicants for admission, and promotes public safety.

(USCIS_AR078).

14. The Edlow Memo confirmed that it was rescinding the Chapparo Memo and any other policies that conflict with the policies stated in the Edlow Memo. *Id.*

15. The Edlow Memo provided this summary rationale for the policy change:

> [T]he changes are designed to better enforce the statutory requirement that aliens admitted as refugees who have been present in the United States for at least one year return or be returned to OHS custody for inspection and examination for admission as an LPR. They further reflect the public policy interest in thorough vetting of aliens

admitted as refugees, including vetting for national security, public safety, and fraud-related issues. In making these changes, DHS considered any potential reliance interests, and as explained more fully below, DHS believes that any perceived interests are strongly outweighed by the public policy reasons described below.

(USCIS_AR078-79). The Memo then provided detailed explanations for the policy change.

(USCIS_AR079-83).

Respectfully submitted,

LEAH B. FOLEY
United States Attorney

Dated: September ~~1~~4, 2026

By: /s/ *Shawna Yen*

Shawna Yen Assistant U.S. Attorney
U.S. Attorney's Office
John J. Moakley U.S. Courthouse
1 Courthouse Way, Suite 9200
Boston, MA 02210
Tel.: 617-748-3100
Email: Shawna.Yen@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

Dated: September 14, 2026

By: /s/ *Shawna Yen*
SHAWNA YEN
Assistant U.S Attorney