**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| JEAN A., *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>MARKWAYNE MULLIN, in his official capacity as Secretary of Homeland Security, *et al.*,<br><br>*Defendants*. | Case No. 3:26-cv-30031-RGS |

**PLAINTIFFS' RESPONSE TO DEFENDANTS' STATEMENT OF UNDISPUTED MATERIAL FACTS, PURSUANT TO LOCAL RULE 56.1**

Pursuant to Local Rule 56.1, Plaintiffs submit the following response to Defendants' Statement of Undisputed Facts (ECF No. 84-1). Each of Defendants' factual assertions are copied in whole, followed by Plaintiffs' response.

1. INA § 209(a)(1), 8 U.S.C. § 1159(a)(1), provides that an alien is admitted to the United States with refugee status, who has been physically present in the United States for at least one year, and who has not acquired permanent resident status, "shall at the end of such year period, return or be returned to the custody of the Department of Homeland Security [("DHS")] for inspection and examination for admission to the United States as an immigrant in accordance with the provisions of sections 235, 240, 241." INA § 209(a)(1), 8 U.S.C. § 1159(a)(1).

**RESPONSE:** Undisputed that the quoted language appears in the statute. Plaintiffs respectfully direct the Court to the cited statutes and regulations for a true and accurate representation of their contents and deny to the extent Defendants' descriptions are inconsistent therewith. Plaintiffs aver that this paragraph consists of statements of law to which no response is required.

2. INA § 207(c)(4), 8 U.S.C. § 1157(c)(4), provides that an alien's refugee status may be terminated by DHS if it is determined that the alien did not meet the refugee definition at INA § 101(a)(42), 8 U.S.C. § 1101(a)(42), at the time of admission. Upon termination of refugee status, the alien is processed for immigration proceedings under INA §§ 235, 240, 241, 8 U.S.C. § 1225, 1229a, 1231; 8 C.F.R. § 207.9.

**RESPONSE:** Plaintiffs respectfully direct the Court to the cited statutes and regulations for a true and accurate representation of their contents and deny to the extent Defendants' descriptions are inconsistent therewith.

3. INA § 235(b)(1), 8 U.S.C. § 1225(b)(1), mandates detention for certain applicants for admission processed for expedited removal, during the credible fear process, and for any further consideration of an application for asylum.

**RESPONSE:** Plaintiffs respectfully direct the Court to the cited statutes and regulations for a true and accurate representation of their contents and deny to the extent Defendants' descriptions are inconsistent therewith.

4. INA § 235(b)(2), 8 U.S.C. § 1225(b)(2), provides that "an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted,

the alien shall be detained for a proceeding under section 240."

**RESPONSE:** Plaintiffs respectfully direct the Court to the cited statutes and regulations for a true and accurate representation of their contents and deny to the extent Defendants' descriptions are inconsistent therewith. Plaintiffs aver that this paragraph consists of statements of law to which no response is required.

5. Refugees, upon admission, are provided notice that they must apply for adjustment of status to become lawful permanent residents (LPRs). This notice is provided on the USCIS website and may also come from CBP upon the refugee's admission at a U.S. Port of Entry or from nonprofit resettlement agencies who are charged by the U.S. Department of State through cooperative agreements to assist refugees. (USCIS_AR082; USCIS_AR068-073).

**RESPONSE: Deny** knowledge sufficient to admit or deny that all refugees are provided notice of adjustment of status requirements upon admission. Undisputed that the USCIS website posts a notice that the law requires that refugees apply for adjustment of status, but Plaintiffs respectfully refer the Court to the full text of the USCIS website notice, which states that "the law requires refugees to apply for lawful permanent resident status after they have been physically present in the United States for at least 1 year." *See* "Green Card for Refugees," available at https://www.uscis.gov/green-card/green-card-eligibility/green-card-for-refugees.

6. In a Memorandum of November 9, 2001, Bo Cooper, the General Counsel of the INS, advised that "Section 209(a)(1)(C) of the Act requires a refugee to submit to inspection and examination by the Service for admission to the United States as an immigrant at the end of the one-year period following the refugee's admission into the United States. A refugee who has not voluntarily submitted himself or herself for examination and inspection pursuant to an application for adjustment of status may be taken into custody by the Service for the purpose of such examination and inspection and, if found inadmissible, may be placed in removal proceedings." (USCIS_AR002).

**RESPONSE:** Undisputed that the quoted language appears in the 2001 INS Memo.

7. On May 10, 2010, James Chaparro, who was then a Director with ICE, issued Policy No. 11039.1: Detention of Refugees Admitted under INA § 207 Who Have Failed to Adjust to Lawful Permanent Resident Status. ("Chaparro Memo") (USCIS_AR021).

**RESPONSE:** Undisputed.

8. The Chaparro Memo stated that, under INA § 209(a)(1), refugees who are physically present in the United States for at least one year are to return, or be returned, to the custody of DHS for inspection and examination, but it restricted the legal authority of officers to maintain custody of refugees who failed to present themselves for inspection. (USCIS_AR021-22). Under the Chaparro Memo, failure by a refugee to obtain LPR status, by itself, was not treated as a basis for removal and was not considered a proper basis for detention. (USCIS_AR022). Furthermore, if an unadjusted refugee was arrested, DHS was required, within 48 hours, to either: (1) release the individual or (2) initiate removal proceedings by issuing a Notice to Appear. (USCIS_AR022). If it became apparent earlier that no ground of inadmissibility or deportability applied, the individual was to be promptly released. (USCIS_AR022).

**RESPONSE:** Undisputed.

9. On January 20, 2025, the President issued Executive Order ("EO") 14163, Realigning the United States Refugee Admissions Program, suspending the U.S. Refugee Admissions Program ("USRAP") until the admission of refugees aligns with the interests of the United States. Further, EO 14163 stated that the United States needs to ensure public safety and national security are strongly considered in the administration of the USRAP and only admit refugees who can fully and appropriately assimilate into the United States. *Id.*

**RESPONSE:** Undisputed that Executive Order 14163 was issued suspending the USRAP. Plaintiffs respectfully direct the Court to the cited Executive Order for a true and accurate representation of its contents.

10. On March 25, 2025, USCIS conducted a review of 31,000 recently [sic] individuals from Ecuador, El Salvador, Guatemala, Honduras, and Venezuela, how [sic] were admitted into the United States as refugees from 2021-2024. (USCIS_AR074-75). The review identified 1,597 cases (consisting of 3,735 aliens) with indicators of potential Public Safety concerns – namely tattoos that are consistent with suspected gang membership. (USCIS_AR074). Out of the 14,633 (31,497 individuals) Stateside Refugee cases reviewed, 42.3% had been subject to insufficient questions about Potential Public Safety concerns, while 7.7 % had evidence of Public Safety concern and 3.2% had strong evidence of Public Safety concern. (USCIS_AR075).

**RESPONSE:** Undisputed that this data appears in the 5-Country Refugee Review

Memo produced in the Administrative Record. Plaintiffs dispute the characterization of the data as accurate and the implication that this review made any conclusive determination about public safety of concerns related to any individual.

11. On December 18, 2025, ERO's Acting Executive Associate Director Marcos Charles issued a memorandum to all Field Office Directors rescinding the Chaparro Memo, effectively immediately. ("Recission Memo"). (USCIS_AR076). The reason for this rescission was to act consistently with "the policy of the United States to protect its citizens from terrorist attacks and other national security and public safety threats, including through screening and vetting protocols and procedures associated with visa adjudications and other immigration processes, as reflected in the December 16, 2025 Presidential Proclamation, *Restricting and Limiting the Entry of Foreign Nationals to Protect the Security of the United States." Id.*

**RESPONSE:** Undisputed that the quoted language appears in the Refugee Recission Memo. Plaintiffs dispute that the Rescission Memo provided a reason for the rescission.

12. On February 18, 2026, USCIS Director Edlow and Acting ICE Director Lyons issued a Memorandum titled: "Detention of Refugees Who Have Failed to Adjust to Lawful Permanent Resident Status." ("Edlow Memo") (USCIS_AR077-83). The Edlow Memo noted that:

> USCIS and ICE have determined that prior policy decisions and operational guidance resulted in incomplete implementation of the requirements of section 209 of the Immigration and Nationality Act (INA), 8 U.S.C. § 1159, governing the conditional admission of refugees and their adjustment of status. In practice, refugees who did not file an application for adjustment or did not return for the required inspection and examination were allowed to remain in the United States without undergoing the full, congressionally mandated, second round of vetting. This created a population of conditional refugees who had not been fully re-screened, with associated public safety and national security risks.

(USCIS_AR077).

**RESPONSE:** Undisputed that the quoted language appears in the Edlow Memo. Plaintiffs dispute the Edlow Memo's characterization of a "second round of vetting" as "congressionally mandated," the characterization of such refugees as "conditional refugees," and the conclusion that failure to conduct a "second round of vetting" is

"associated" with "public safety and national security risks." Plaintiffs respectfully refer the Court to the full text of 8 U.S.C. 1159 and the full text of the Edlow Memo or Refugee Detention Memo.

13. The Edlow Memo set forth the following new policy:

> When a refugee is admitted to the United States, the admission is conditional and subject to a mandatory review after one year of physical presence in the United States under INA§ 209(a)(l), 8 U.S.C. § 1159(a)(l ). At one year after admission, the refugee must return, or be returned, to Department of Homeland Security (DHS) custody for inspection and examination for admission as an LPR.
>
> - If the refugee does not voluntarily return, DHS will return the individual to custody (i.e., arrest and detain) for this purpose.
> - DHS may maintain custody for the duration of the inspection and examination process.
>
> This detain-and-inspect requirement ensures that refugees are re-vetted after one year, aligns post-admission vetting with that applied to other applicants for admission, and promotes public safety.

(USCIS_AR078).

**RESPONSE:** Undisputed that the quoted language appears in the Edlow Memo. Plaintiffs dispute the Edlow Memo's characterization of Defendants' authority to re-vet, arrest, or detain refugees and respectfully refer the Court to the full text of 8 U.S.C. 1159.

14. The Edlow Memo confirmed that it was rescinding the Chapparo Memo and any other policies that conflict with the policies stated in the Edlow Memo. *Id*.

**RESPONSE:** Undisputed.

15. The Edlow Memo provided this summary rationale for the policy change:

> [T]he changes are designed to better enforce the statutory requirement that aliens admitted as refugees who have been present in the United States for at least one year return or be returned to OHS custody for inspection and examination for admission as an LPR. They further reflect the public policy interest in thorough vetting of aliens admitted as refugees, including vetting for national security, public safety, and fraud-related issues. In making these changes, DHS considered any potential reliance interests, and as explained more fully below, DHS believes that any perceived interests are strongly outweighed by the public

> policy reasons described below.
>
> (USCIS_AR078-79). The Memo then provided detailed explanations for the policy change. (USCIS_AR079-83).

**RESPONSE:** Undisputed that the quoted language appears in the Edlow Memo (or "Refugee Detention Memo"). Plaintiffs dispute Defendants' characterization that the Edlow Memo provides detailed explanations for the policy change**.**

Dated: October 15, 2026 By:


*/s/ Erez Reuveni*
Erez Reuveni (MA BBO No. 666769)
Jennie L. Kneedler (DC Bar No. 500261)*
Ryan Cooper (DC Bar No. 1645301)*
Kali Schellenberg (MA BBO No. 694875)
Steven Y. Bressler (DC Bar No. 482492)*
Robin F. Thurston (DC Bar No. 1531399)*
**DEMOCRACY FORWARD FOUNDATION**
P.O. Box 34553
Washington, DC 20043
Phone: (202) 316-9538
ereuveni@democracyforward.org
jkneedler@democracyforward.org
rcooper@democracyforward.org
kschellenberg@democracyforward.org
sbressler@democracyforward.org
rthurston@democracyforward.org

Ghita Schwarz (NY Bar No. 3030087)*
Guadalupe Aguirre (NY Bar No. 5536107)*
Mevlüde Akay Alp (NY Bar No. 5149653)*
Kimberly Grano (NY Bar No. 5858808)*
Pedro Sepulveda (NY Bar No. 6198550)*
**INTERNATIONAL REFUGEE ASSISTANCE PROJECT**
One Battery Plaza, 33rd floor
New York, New York 10004
(646) 939-9169
gschwarz@refugeerights.org
laguirre@refugeerights.org
makayalp@refugeerights.org
kgrano@refugeerights.org
psepulveda@refugeerights.org
mhauptman@refugeerights.org

Dalia Fuleihan (IL Bar No. 6335082)*
**INTERNATIONAL REFUGEE ASSISTANCE PROJECT**
P.O. Box 47611
Chicago, IL 60647
646-740-6271
dfuleihan@refugeerights.org

John Nathanson (NY Bar No. 2630697)*
Andrew Tannenbaum (NY Bar No. 3940434)*
Leila Siddiky (NY Bar No. 5225164)*
**ALLEN OVERY SHEARMAN STERLING US LLP**
599 Lexington Avenue
New York, NY 10022

*Counsel for All Plaintiffs*

* Admitted *pro hac vice*

212-848-4000
john.nathanson@aoshearman.com
andrew.tannenbaum@aoshearman.com
leila.siddiky@aoshearman.com

Emily Westridge Black (TX Bar No. 24060815)*
**ALLEN OVERY SHEARMAN STERLING US LLP**
300 West 6th Street
Austin, TX 78701
512-647-1909
emily.westridgeblack@aoshearman.com

Gideon J. Duke-Cohan (BBO# 716358)
**ALLEN OVERY SHEARMAN STERLING US LLP**
One Beacon Street
Boston, MA 02108
212-610-6353
gideon.duke-cohan@aoshearman.com

**CERTIFICATE OF SERVICE**

I hereby certify that on this October 15, 2026, I caused the foregoing to be electronically filed with the clerk of the court for the U.S. District Court for the District of Massachusetts by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record, a true and correct copy of the foregoing instrument and all attachments.

*/s/ Pedro Sepulveda*
PEDRO SEPULVEDA