**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| JEAN A., *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>MARKWAYNE MULLIN, in his official capacity as Secretary of Homeland Security, *et al.*,<br><br>*Defendants*. | Case No. 3:26-cv-30031-RGS |

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF CLASS COUNSEL**

## TABLE OF CONTENTS

INTRODUCTION ..... 1

ARGUMENT ..... 1

I. DEFENDANTS WAIVED ALL NON-JURISDICTIONAL DEFENSES BY FILING AN UNTIMELY OPPOSITION ..... 1

II. ALL PUTATIVE CLASS MEMBERS HAVE ARTICLE III STANDING ..... 2

A. Plaintiffs Satisfy Each Element of Article III Standing ..... 2

B. The Alleged Alternative Bases for Detention Do Not Defeat Standing ..... 5

III. THE PROPOSED CLASS MEETS THE NUMEROSITY REQUIREMENT ..... 6

IV. THE PROPOSED CLASS MEETS THE OTHER REQUIREMENTS OF RULE 23(a) AND 23(b)(2) ..... 7

CONCLUSION ..... 8

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aguasvivas v. Pompeo*,
984 F.3d 1047 (1st Cir. 2021)....................3

*Alasaad v. Nielsen*,
No. 17-CV-11730-DJC, 2018 WL 2170323 (D. Mass. May 9, 2018)....................3

*Barbara v. Trump*,
790 F. Supp. 3d 80 (D.N.H. 2025)....................6

*Batchelar v. Interactive Brokers, LLC*,
No. 3:15-cv-1836, 2023 WL 7277258 (D. Conn. Aug. 25, 2023)....................7

*Brito v. Garland*,
22 F.4th 240 (1st Cir. 2021)....................5

*In re Celexa & Lexapro Mktg. & Sales Pracs. Litig.*,
MDL No. 09–02067–NMG, 2014 WL 108197 (D. Mass. Jan. 10, 2014)....................7

*Choeum v. I.N.S.*,
129 F.3d 29 (1st Cir. 1997)....................2

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013)....................3, 5

*Commonwealth v. Trump*,
836 F. Supp. 3d 385 (D. Mass. 2026)....................3

*D.V.D. v. U.S. Dep't of Homeland Sec.*,
778 F. Supp. 3d 355 (D. Mass. 2025)....................6

*Diamond Alt. Energy, LLC v. EPA*,
606 U.S. 100 (2025)....................5

*Labranche v. U.S. Liberty Ins. Co.*,
786 F. Supp. 3d 262 (D. Mass. 2025)....................2

*Larson v. Valente*,
456 U.S. 228 (1982)....................6

*Massachusetts v. EPA*,
549 U.S. 497 (2007)....................6

*McCuin v. Sec'y of Health & Hum. Servs.*,
817 F.2d 161 (1st Cir. 1987) ....................................................................................7

*MDR Constr. Co. v. Veterans Constr.*,
No. 22-10238, 2024 WL 665037 (D. Mass. Feb. 16, 2024) ..................................................2

*Monsanto Co. v. Geertson Seed Farms*,
561 U.S. 139 (2010) ....................................................................................................2

*Murthy v. Missouri*,
603 U.S. 43 (2024) ..................................................................................................3, 4

*N.H. Lottery Comm'n v. Rosen*,
986 F.3d 38 (1st Cir. 2021) ......................................................................................3, 4

*NEPSK, Inc. v. Town of Houlton*,
283 F.3d 1 (1st Cir. 2002) ..........................................................................................1

*Payne v. Goodyear Tire & Rubber Co.*,
216 F.R.D. 21 (D. Mass. 2003) ....................................................................................8

*Susan B. Anthony List v. Driehaus*,
573 U.S. 149 (2014) ...............................................................................................3, 4

*U.H.A v. Bondi*,
817 F. Supp. 3d 752 (D. Minn. 2026) ............................................................................4

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011) ....................................................................................................8

**Regulations**

91 F.R. 65077 ..................................................................................................6

**Rules**

D. Mass. Local Rule 7.1 ...........................................................................................1, 2

Fed. R. Civ. P. 23 ........................................................................................... *in passim*

**Other Authorities**

Arelis R. Hernández & Teo Armus, New DHS Memo Outlines Plan to Detain
Refugees for Further Vetting, Wash. Post (Feb. 18, 2026) ...............................................7

U.S. Citizenship & Immigr. Servs., Immigration and Citizenship Data ..............................6, 7

## INTRODUCTION

Without permission from this Court or even a proffered justification, Defendants filed their opposition five weeks late, thereby waiving their arguments in opposition to class certification. Moreover, Defendants fail to meaningfully engage with the straightforward case for class certification in this action. Instead, they raise for the first time a standing argument, contending that the threat of harm Plaintiffs face is speculative. Defendants' standing argument fails because Defendants' course of conduct nationwide makes clear that, absent this Court's Stay Order, Defendants would continue to subject Plaintiffs to the Refugee Detention Policy that this action challenges. Defendants' other class certification arguments fail because, among other reasons, they misstate settled law on numerosity and rely on a misreading of the Refugee Detention Policy with respect to other class certification requirements.

As set forth in Plaintiffs' opening brief (ECF Nos. 72, 76)[1] and the accompanying declarations (ECF Nos. 73-11–73-16), the proposed class satisfies every requirement of Rule 23(a) and Rule 23(b)(2). Accordingly, the Court should certify the class as defined, appoint Individual Plaintiffs as Class Representatives, and appoint the undersigned counsel as Class Counsel.

## ARGUMENT

### I. DEFENDANTS WAIVED ALL NON-JURISDICTIONAL DEFENSES BY FILING AN UNTIMELY OPPOSITION

Local Rule 7.1(b)(2) requires a party to file an opposition within 14 days after service of a motion. L.R. 7.1(b)(2). It is well established that a party who fails to file a timely opposition waives its arguments. *See, e.g.*, *NEPSK, Inc. v. Town of Houlton*, 283 F.3d 1, 5-8 (1st Cir. 2002) (a court

[1] Defendants' Opposition is cited herein as "Opp'n"; Plaintiffs' Opening Brief is cited herein as "Mot." Capitalized terms otherwise have the same meanings as set forth in Plaintiffs' Opening Brief. Unless otherwise indicated, internal quotation marks and citations are omitted.

may consider a motion unopposed when the opposition is untimely); *Labranche v. U.S. Liberty Ins. Co.*, 786 F. Supp. 3d 262, 270 (D. Mass. 2025) ("When a party fails to meet [L.R. 7.1(b)(2)'s] deadline, a court may consider the motion unopposed, or the opposition waived and allow the motion."); *MDR Constr. Co. v. Veterans Constr., LLC*, No. 22-10238, 2024 WL 665037, at *5 (D. Mass. Feb. 16, 2024) (denying a motion for partial summary judgment as untimely where the moving party "without apology . . . simply filed its motion for partial summary judgment . . . 21 days after the deadline").

Here, Defendants' opposition was due on August 7, 2026, but they made no filing that day nor did they seek an extension of that deadline. Instead, Defendants filed their opposition on September 14, 2026—more than five weeks late and without leave of court. (ECF No. 82.) While the Court granted the parties' amended summary judgment briefing schedule on August 21, 2026, Defendants did not seek an extension with respect to, and the parties' proposed amended schedule did not address, Plaintiffs' Motion for Class Certification and Appointment of Class Counsel. *See* ECF No. 78. The Court should therefore disregard Defendants' Opposition and grant Plaintiffs' motion for class certification.[2]

## II. ALL PUTATIVE CLASS MEMBERS HAVE ARTICLE III STANDING

### A. Plaintiffs Satisfy Each Element of Article III Standing

A plaintiff has standing if it shows an injury that is "concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010). Article III's injury requirement is satisfied for future injuries where the threatened harm is "certainly impending, or there is a

[2] Subject matter jurisdiction cannot be waived. *See Choeum v. I.N.S.*, 129 F.3d 29, 32 (1st Cir. 1997). Nevertheless, the Court has subject matter jurisdiction. *See* Section II.

substantial risk that the harm will occur." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014); *see Aguasvivas v. Pompeo*, 984 F.3d 1047, 1052-53 (1st Cir. 2021). There is no "numerical threshold" required to show a substantial risk of harm and "[e]ven a small probability of injury is sufficient" if granting the relief sought would reduce that probability. *Alasaad v. Nielsen*, No. 17-CV-11730-DJC, 2018 WL 2170323, at *9 (D. Mass. May 9, 2018).

Plaintiffs satisfy Article III's requirements. Plaintiffs and the proposed class face a substantial risk of future harm in the form of arrest and detention, as Defendants' past practices demonstrate. *See N.H. Lottery Comm'n v. Rosen*, 986 F.3d 38, 50 (1st Cir. 2021) (holding there was injury-in-fact when plaintiffs were subject to the threatened enforcement of law); *cf. Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 n.5 (2013) (explaining that a substantial risk of harm in a suit for injunctive relief can satisfy the concrete requirement in Article III and that "plaintiffs [do not need] to demonstrate that it is literally certain that the harms they identify will come about"). A "history of past enforcement against the same conduct is good evidence that the threat of enforcement is not chimerical and, therefore, reflects a substantial risk of harm." *Commonwealth v. Trump*, 836 F. Supp. 3d 385, 409 (D. Mass. 2026). Defendants have a history of arresting and detaining unadjusted refugees with pending applications. *See, e.g.*, ECF No. 73-12, Ex. L (Decl. of Hamad B.) ¶ 10 (describing how he was "arrested" despite offering to "show [immigration officers] more documentation of [his] refugee status, including a receipt for [his] green card application"). The only obstacle to Defendants' continued engagement in that practice is this Court's Stay Order. ECF No. 51.

Further, Defendants' reliance on *Murthy v. Missouri*, 603 U.S. 43 (2024), to argue that past injury is insufficient is misplaced. Opp'n at 10. *Murthy* found no standing because, "without evidence of continued pressure" by the government, any future injury was speculative. *Id.* at 69-

73. The alleged injuries in *Murthy* flowed from third-party platforms with "independent incentives to moderate content," not from the defendants themselves, *id.* at 60, and the record lacked any "specific causation" linking the government to a discrete harm, *id.* at 59. Notably, and unlike in the present action, the government's conduct in *Murthy* had "considerably subsided" before suit, without the need for judicial intervention. *Id.* at 71.

Here, by contrast, until the Court's Stay Order,[3] Defendants did not cease their "continued pressure" nationwide against the proposed class members—rhetorically, legally, or operationally. After rescinding the 2010 ICE Policy and implementing the policy to detain unadjusted refugees, Defendants arrested and detained dozens of unadjusted refugees, including class members with pending applications. *See* ECF No. 73-12, Ex. L (Decl. of Hamad B.) ¶ 10. Further, Plaintiffs' claims are not predicated on a speculative chain of possibilities. Unlike the plaintiffs in *Murthy*, who could point to no ongoing government conduct, Plaintiffs here confront a policy that Defendants were actively enforcing prior to the Court's Stay Order and continue to allege is compelled by statute. ECF No. 51.

Article III also does not require Plaintiffs to stake their freedom on the government's assurances that it will appropriately exercise discretion when the record shows a history "of past enforcement against the same conduct." *Rosen*, 986 F.3d at 50; *Driehaus*, 573 U.S. at 164 (finding Article III standing where the threat of "future enforcement . . . is substantial" given the "history of past enforcement . . . against the same conduct"). Indeed, the Refugee Detention Memo (the

[3] On January 28, 2026, the U.S. District Court for the District of Minnesota issued a temporary restraining order on behalf of a putative class of refugees residing in Minnesota, enjoining Defendants from arresting or detaining refugees on the basis of adjustment status. *U.H.A. v. Bondi*, 817 F. Supp. 3d 752, 772 (D. Minn. 2026). The *U.H.A* action did not address unadjusted refugees in other states and was later voluntarily dismissed on April 14, 2026. *Id.*; Notice of Voluntary Dismissal, *U.H.A.*, No. 26-cv-00417 (D. Minn. Apr. 14, 2026).

"Memo") makes clear that any unadjusted refugee, whether they have applied for adjustment or not, is subject to unlimited detention even if the reason they have not adjusted is due entirely to the government's failure to act. The very first paragraph of the Memo states that it applies to refugees "who have failed to adjust to lawful permanent resident (LPR) status." ECF No. 1-4, Ex. 2 at 1. The "New Policy" the Memo articulates is that once a refugee applies for adjustment, DHS "may maintain custody for the duration of the inspection and examination process," *id.* at 2, and Defendants take the position that custody means detention. Opp'n at 10. Under the heading "Custody, Arrest, and Detention," the Memo states that "DHS may arrest or detain a refugee who has lived in the United States for at least one year and has not yet acquired LPR status under INA § 209(a)(1), 8 U.S.C. § 1159(a)(1)." ECF No. 1-4, Ex. 2 at 3. Nowhere does the Memo exclude from this purported detention authority those who have already applied for adjustment. *See generally* ECF No. 1-4.

The injury here—the threat of detention without lawful basis—is neither hypothetical nor remote. *See Brito v. Garland*, 22 F.4th 240, 252-53 (1st Cir. 2021) (holding that detention under allegedly unlawful procedures is an Article III injury); *Clapper*, 568 U.S. at 414 n.5.

**B. The Alleged Alternative Bases for Detention Do Not Defeat Standing**

Defendants' argument that Plaintiffs' harm is "not likely to be redressed" because there could be "multiple reasons aside" from the Refugee Detention Policy that one may be detained is unavailing and speculative. Opp'n at 10-11. In any event, Plaintiffs do not challenge any possible future detention for a valid, authorized reason; they challenge the policy of detaining unadjusted refugees solely because they have not yet adjusted status. Plaintiffs' future harms are directly traceable to the Refugee Detention Policy. *See Diamond Alt. Energy, LLC v. EPA*, 606 U.S. 100, 114 (2025) ("When a plaintiff is the object of a government regulation, there should ordinarily be

little question that the regulation causes injury to the plaintiff and that invalidating the regulation would redress the plaintiff's injuries.").

But for the Refugee Detention Policy, Plaintiffs and members of the proposed class would not be living in a constant state of fear that they will be arrested and detained indefinitely. *See* ECF No. 73-11, Ex. K (Decl. of Jean A.) ¶ 16. And, as the class includes only refugees detained or threatened with detention "pursuant to the Refugee Detention Policy," Mot. at 1, each member's injury is traceable to it by definition. Moreover, a plaintiff "need not show that a favorable decision will relieve his *every* injury," *Larson v. Valente*, 456 U.S. 228, 243 n.15 (1982) (emphasis in original), only that the risk "would be reduced to some extent," *Massachusetts. v. EPA*, 549 U.S. 497, 526 (2007). Plaintiffs have done so here.

## III. THE PROPOSED CLASS MEETS THE NUMEROSITY REQUIREMENT

Numerosity presents a "low hurdle," *D.V.D. v. U.S. Dep't of Homeland Sec.*, 778 F. Supp. 3d 355, 381 (D. Mass. 2025). Defendants do not seriously contest that the proposed class is numerous;[4] rather, they argue that Plaintiffs' citation to a Washington Post article estimating approximately 100,000 refugees across the country facing arrest and detention under the Refugee Detention Policy is insufficient proof. Opp'n at 11-12. Defendants cite no relevant authority to support their argument; a plaintiff need only present "credible evidence" to meet the numerosity requirement, and Defendants offer no basis for finding that the cited Washington Post article is not credible. *See Barbara v. Trump*, 790 F. Supp. 3d 80, 91 (D.N.H. 2025) (provisionally certifying

---

[4] Indeed, Defendants' own records reflect that the proposed class clears the low hurdle of numerosity. *See, e.g.*, Removing 30-Day Refugee Termination Notice, 91 Fed. Reg. 65077, 65088 ("DHS has identified about 186,000 cases of [unadjusted] refugees."); U.S. Citizenship & Immigr. Servs., Immigration and Citizenship Data, https://www.uscis.gov/tools/reports-and-studies/immigration-and-citizenship-data (last visited Oct. 4, 2026) (providing a spreadsheet titled "All USCIS Application and Petition Form Types (Fiscal Year 2026, Quarter 3)" indicating that 149,470 I-485 refugee applications to adjust status remained pending at that time).

the class and concluding that plaintiffs' citation of an estimate from an article published by the Migration Policy Institute provided credible evidence of "the number of children denied American citizenship" under a challenged Executive Order). Defendants also overlook that the Washington Post article discusses Defendants' previously enjoined actions in Minnesota, where Defendants sought to arrest and detain 5,600 refugees present in that state.[5] If 5,600 refugees subject to the policy live in Minnesota alone, it is reasonable to infer that the nationwide class is far too numerous for joinder to be practicable. *See McCuin v. Sec'y of Health & Hum. Servs.*, 817 F.2d 161, 167 (1st Cir. 1987) (explaining that courts may "draw reasonable inferences from the facts presented to find the requisite numerosity"); *In re Celexa & Lexapro Mktg. & Sales Pracs. Litig.*, MDL No. 09-02067-NMG, 2014 WL 108197, at *5 (D. Mass. Jan. 10, 2014) (finding numerosity based on the size of the market). That Plaintiffs are unable to offer an exact number is not a bar to class certification. *See, e.g.*, *Batchelar v. Interactive Brokers, LLC*, No. 3:15-cv-1836-AWT, 2023 WL 7277258, at *5 (D. Conn. Aug. 25, 2023) ("[T]he lack of knowledge as to the exact number of affected persons is not a bar to maintaining a class action where the defendants alone have access to such data.").

## IV. THE PROPOSED CLASS MEETS THE OTHER REQUIREMENTS OF RULE 23(a) AND 23(b)(2)

Defendants' superficial arguments on other class certification elements fail to meaningfully engage with Plaintiffs' opening motion. In addition to numerosity, *see supra* Section III, the

[5] Arelis R. Hernández & Teo Armus, New DHS Memo Outlines Plan to Detain Refugees for Further Vetting, Wash. Post (Feb. 18, 2026) ("The [detention] memo appeared in a court filing one day before a scheduled hearing in Minnesota federal court, where a judge temporarily blocked U.S. Immigration and Customs Enforcement in late January from detaining 5,600 refugees in the state after several organizations sued."), https://www.washingtonpost.com/immigration/2026/02/18/trump-immigrants-refugees-minnesota-memo/

proposed class satisfies commonality, typicality, and adequacy, and is properly certified under Rule 23(b)(2). Mot. at 10-17. Defendants' arguments to the contrary rest on a misreading of the Refugee Detention Policy.

First, Defendants suggest that the class is overbroad because the Refugee Detention Memo notes that refugees who apply to adjust status "may be considered to have voluntarily returned." Opp'n at 13-14. The key word is *may*; the permissive language leaves every unadjusted refugee, whether they have applied for adjustment or not, exposed to arrest and detention at Defendants' discretion, as the arrest of Hamad B. demonstrates. *See* ECF No. 73-12, Ex. L (Decl. of Hamad B.) ¶¶ 8, 10. Whether that categorical policy violates the INA, the APA, and the Constitution is a common question "capable of classwide resolution." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

Second, the factual variations among class members do not defeat typicality, which requires only that the class members' claims "share the same essential characteristics." *Payne v. Goodyear Tire & Rubber Co.*, 216 F.R.D. 21, 26 (D. Mass. 2003). The decisive characteristic here is that every proposed class member's claim arises from the same central fact: Defendants' adoption of their Refugee Detention Policy.

Third, Defendants do not—and cannot—identify any conflict undermining adequacy.

Fourth, and finally, the proposed class is appropriate for Rule 23(b)(2) certification because Plaintiffs seek vacatur of the Refugee Detention Policy, an indivisible remedy that can be granted "only as to all of the class or as to none of them." *Dukes*, 564 U.S. at 360.

## CONCLUSION

For the foregoing reasons, together with the reasons in Plaintiffs' Opening Brief, this Court should grant Plaintiffs' motion for class certification, appointment of Individual Plaintiffs as Class Representatives, and appointment of undersigned counsel as Class Counsel.

Dated: October 15, 2026

By:

*/s/ John Nathanson*

John Nathanson (NY Bar No. 2630697)*
Andrew Tannenbaum (NY Bar No. 3940434)*
Leila Siddiky (NY Bar No. 5225164)*
**ALLEN OVERY SHEARMAN STERLING US LLP**
599 Lexington Avenue
New York, NY 10022
212-848-4000
john.nathanson@aoshearman.com
andrew.tannenbaum@aoshearman.com
leila.siddiky@aoshearman.com

Emily Westridge Black (TX Bar No. 24060815)*
**ALLEN OVERY SHEARMAN STERLING US LLP**
300 West 6th Street
Austin, TX 78701
512-647-1909
emily.westridgeblack@aoshearman.com

Gideon J. Duke-Cohan (MA BBO# 716358)
**ALLEN OVERY SHEARMAN STERLING US LLP**
One Beacon Street
Boston, MA 02108
212-610-6353
gideon.duke-cohan@aoshearman.com

Megan McLaughlin Hauptman*
**INTERNATIONAL REFUGEE ASSISTANCE PROJECT**
650 Massachusetts Avenue, N.W. Suite 600 Washington, D.C. 20001
(516) 732 7116
mhauptman@refugeerights.org

Erez Reuveni (MA BBO No. 666769)
Jennie L. Kneedler (DC Bar No. 500261)
Ryan Cooper (DC Bar No. 1645301)
Kali Schellenberg (MA BBO No. 694875)
Steven Y. Bressler (DC Bar No. 482492)
Robin F. Thurston (DC Bar No. 1531399)
**DEMOCRACY FORWARD FOUNDATION**
P.O. Box 34553
Washington, DC 20043
(202) 316-9638 (Reuveni)
ereuveni@democracyforward.org
jkneedler@democracyforward.org
rcooper@democracyforward.org
kschellenberg@democracyforward.org
sbressler@democracyforward.org
rthurston@democracyforward.org

Ghita Schwarz
Guadalupe Aguirre
Mevlüde Akay Alp
Kimberly Grano
Pedro Sepulveda
**INTERNATIONAL REFUGEE ASSISTANCE PROJECT**
One Battery Plaza, 33rd Floor
New York, New York 10004
(646) 939-9169
gschwarz@refugeerights.org
laguirre@refugeerights.org
makayalp@refugeerights.org
kgrano@refugeerights.org
psepulveda@refugeerights.org

Dalia Fuleihan
**INTERNATIONAL REFUGEE ASSISTANCE PROJECT**
P.O. Box 47611
Chicago, IL 60647
646-740-6271
dfuleihan@refugeerights.org

*Counsel for All Plaintiffs*
* Admitted Pro Hac Vice

**CERTIFICATE OF SERVICE**

I, John Nathanson, hereby certify that on October 15, 2026, a true copy of the foregoing document was electronically filed through the Court's ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants.

Dated: October 15, 2026
New York, NY

Respectfully submitted,

By: */s/ John Nathanson*
John Nathanson